## THE OLYMPIC.

(Circuit Court of Appeals, Second Circuit. May 12, 1915.)

No. 289.

TOWAGE ⬤⟹18—TUG ENGAGED IN DOCKING STEAMSHIP—INJURY BY PRO-
PELLER.

A tug engaged with others in docking a large steamship, which took a
position alongside near her stern, and when she started her starboard pro-
peller was drawn by suction within reach of the blades and injured, *held*
not entitled to recover from the steamship, which, as customary, was to
be expected to use her propellers whenever necessary to aid the work of
the tugs, but to have assumed the risk of the position it took.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 40; Dec. Dig.
⬤⟹18.]

Appeal from the District Court of the United States for the South-
ern District of New York.

This cause comes here upon appeal from a decree dismissing the
libel of the owner of the steam tug O. L. Hallenbeck against the
steamship Olympic, for damages sustained by the Hallenbeck's com-
ing into collision with the starboard propeller of the Olympic. The
opinion of Judge Hazel will be found in 221 Fed. 296.

Samuel Park and Carpenter & Park, all of New York City, for ap-
pellant.

Charles C. Burlingham and Burlingham, Montgomery & Beecher, all
of New York City, for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

LACOMBE, Circuit Judge. The Olympic was berthing on the
north side of Pier 59, North River. The Hallenbeck was one of a
flotilla of tugs engaged in assisting her to do so. The steamer's bow
was brought to the upper corner of Pier 59, her stern angling out into
the river; the tide was ebb and the wind northeast. Some of the
tugs took off-shore lines from her port quarter and hauled up river;
when she had canted off sufficiently other tugs went under her star-
board quarter to push her stern up river. The steamer assisted the
operation in the usual way by going ahead with her port propeller and
backing with her starboard propeller. At the time when the Hallen-
beck, which was to push on the starboard quarter, came into position,
the starboard propeller was temporarily motionless. She came up on
the starboard side, a little behind the steamer's after smokestack, and
called to the steamer to throw her a heaving line; the steamer's deck
was too high to throw her own line to it. A heaving line was thrown,
and a man on the tug began to make it fast to her bitt. The stern was
then up against the side of the steamer and the tug's engines were
stopped; her bow was about 100 feet forward of the steamer's pro-
peller, the tug angling about 45 degrees. At this time the starboard
propeller began to revolve, and the suction produced thereby brought

the stern of the tug into collision with the propeller. The tug's captain admitted that he knew it was to be expected that the steamer would use her own power in berthing, also that he did not expect to have flags shown him in order to tell him what he should do with his boat.

Libelant relies upon the opinion of this court in The City of New York, 54 Fed. 181, 4 C. C. A. 268. We do not see how this helps him. We said:

"The measure of care to be exercised by a steamship in the use of her propellers differs under different circumstances; and the same rule of law which would exonerate an employer from the consequences of an injury to a servant caused by a risk inherent in the service which the latter was hired to perform will exonerate a steamship from responsibility for an injury caused by a similar risk received by a tug while in its employ. It is the duty of the employer to use due care to avoid exposing the servant to extraordinary risks which the latter cannot reasonably anticipate; but he is not bound to provide against the risks which are necessarily incident to the service to be rendered. These are implied conditions of the contract of hiring, and there is no reason why they are not as applicable to the relation of steamship and tug as to that of ordinary master and servant."

The Olympic, under the law, undertook not to expose the tug to any extraordinary risk while engaged in the service. The tug held herself out as experienced and competent to facilitate the operations of the steamship, without embarrassing her unnecessarily, and as competent to exercise due care for her own safety. We do not see in what respect the Olympic was in fault. She was conducting the usual process of berthing in the usual way. Presumably with a large steamer it always involves some risk, which is assumed by the tugs which engage in it. Every one who is familiar with the process knows that the steamer uses her own power, and, in doing so, must use her propellers one way or the other, sometimes acting very promptly; it would hardly seem practicable for her to give notice to the attendant flotilla every time she started or stopped them, and there is no testimony indicating any such practice. The Olympic did not order or invite the tug to put herself in position to push at any particular place. The tug master selected what he thought would suit, and hailed some one at that part of the steamer to throw him a line. We agree with Judge Hazel that, in the absence of any specific instructions from the steamer to bring the tug to any particular place on her quarter, the latter should have kept herself under control or taken a position farther from the stern.

Decree affirmed, with costs.