THE ANCON.

(Circuit Court of Appeals, Second Circuit. February 18, 1920.)

No. 153.

1. TOWAGE ☞11(6)—SINKING OF TUG BY STEAMSHIP, WHICH SHE WAS ASSIST-
ING, HELD DUE TO THE STEAMER'S FAULT.
    The sinking in Red Hook Channel by a passenger steamer of a tug, as-
sisting her to move from Bush Docks to a Jersey City pier, *held* due to the
fault of the steamship in turning to port without warning to the tug, when
it was on her port bow, pursuant to the orders of the seamship's of-
ficer, though the turn to port was at a proper point for such change of
course.

2. TOWAGE ☞11(6)—MANEUVER BY STEAMER WITHOUT NOTICE, RESULTING IN
DAMAGE TO TUG, HELD TO BE AT STEAMER'S RISK.
    Where particular instructions are given by the navigators of a steam-
ship putting a tug, assisting her in moving to a pier, in a particular posi-
tion, any maneuver of the ship without notice, resulting in damage, is at
the risk of ship, and not of the tug.

Appeal from the District Court of the United States for the South-
ern District of New York.

Libel filed by George I. Forsyth and others against the steamship
Ancon, her engines, etc.; the Panama Railroad Company, Claimant.
Decree dismissing the libel. Libelants appeal. Reversed.

Park & Mattison, of New York City (Samuel Park, of New York
City, of counsel), for appellants.

Richard Reid Rogers, of New York City, for appellee.

Before ROGERS and MANTON, Circuit Judges, and LEARNED
HAND, District Judge.

MANTON, Circuit Judge. [1] The Ancon, loaded with cargo of
a gross tonnage of 9,332 tons, length 489 feet 5 inches, breadth 58
feet, depth 28 feet 9 inches, horse power 4,000, a twin screw passenger
steamer, on the 27th of December, 1908, was moving to Pier 6, Central
Railroad of New Jersey, Jersey City, at about 7:22 a. m., with the
tide being about high, water slack, and turning ebb in the Buttermilk
Channel. The steamship backed out of her slip, and was assisted by
the steam tugs Arthur Kill, Hiawatha, Robert Palmer, and A. W. Mills,
and the libelant's Juniata. The Juniata was 91 feet in length, beam 25
feet, depth 9 feet 5 inches, and 200 horse power. After being assisted
out of the slip, she proceeded with her stern downstream and her bow
heading up toward Red Hook Channel. She was proceeding from Bush
Docks to Pier 6. When about abreast the pier at Bush Docks, the ship's
engines were used; the Juniata was on the starboard bow of the An-
con. The master of the ship was on the bridge in charge of the nav-
igation. When the ship left the end of the pier, both her engines were
half speed ahead, and thus she proceeded up Red Hook Channel. When
in Red Hook Channel, the first officer of the Ancon, standing on the
bow of the ship, ordered the Juniata to proceed to the port bow of
the ship and take the ship's hawser from her bow. Responding, the

Juniata crossed the bow of the steamship, taking a position upon the port bow of the ship about 50 feet distant from the ship. When the Ancon was approaching Pier 40, Brooklyn, in the Red Hook Channel, a heaving line was thrown from the bow of the steamship to the bow of the steam tug, and the tug and the ship at the time were proceeding upon parallel courses. Deckhands of the steam tug pulled the hawser from the ship attached to one end of the heaving line onto the bow of the steam tug, and then proceeded with one end of the hawser attached to the stern bitts of the tug. While engaged in this work, the course of the steamship was changed two points to port. The master in charge of the navigation of the Juniata put his wheel hard to starboard, and the engines, which were going hooked up, were put at full speed ahead in an effort to turn to port. The port bow of the ship came into contact with the starboard side of the steam tug just abaft of her pilot house, resulting in the sinking of the tug off Pier 40, Brooklyn. As the two vessels were coming together, the hawser was cast off the stern bitts of the steam tug. The Arthur Kill was following the steamship upon her port quarter, and the other steam tugs were behind or about the starboard quarter of the ship.

We think that the evidence warrants the claim that no signal of any kind was given by those in charge of the steamship to the Juniata, warning her of her intended change of course or of danger. It is claimed by the libelant that there was not only this change of course, which we think the evidence warrants the claim of, but that the speed was increased. The District Judge dismissed the libel, stating that at the place of collision the Ancon would make her turn to port in the necessary navigation of the ship, and even though the Juniata was in the position she is conceded to have been in, the ship could make this change of course without notice or incurring liability if damage resulted. The facts presented by the testimony were substantially as above stated. The tug, after receiving the order to take the hawser from the steamship's bow, was attempting to execute the order at a reasonable distance away, and while complying with the order, and without notice, the steamship moved two points toward the tug and sank her. The excuse suggested, which is intended to relieve the steamship from liability, is that the tug well knew, or should have known, that at this point there would be a change of course, and because of such knowledge the claim is advanced that the tug must alone sustain the damage. We cannot agree with the argument thus presented. The exercise of reasonable care in the navigation of the ship should have dictated the need for a signal or notice to the navigators of the tug that the steamship was about to change its course. Reasonable opportunity to get out of the place of danger should have been afforded to the navigators of the tug. The Juniata at that time was but carrying out a command of an officer of the steamship, which, in fulfillment of her obligations, she was obliged to obey. That the navigators of the steamship knew of the position of the Juniata and of her attempted execution of the order given is plain from the evidence. The master of the steamship said that the pilot gave an order, and that he then gave an order to proceed from the starboard side to the port

side, and that. he saw the Juniata leave the starboard side, and go around the bow to the port side of the ship, and admitted that she was there under orders. He stated that the chief officer of the ship was at the bow.

The master of the Juniata says that he got an order from the officer of the steamship at the forecastle deck, to go to the port side when the Juniata was attempting to get the hawser on the starboard side of the ship, and when he got on the bow, he threw a heaving line onto the deck of the Juniata. Under orders, he was going to take the hawser on the starboard side of the ship to the after part of the steam tug; but the order was changed, and he was told by the first officer to take the hawser on the port bow. The first officer of the steamship was not called as a witness. Indeed, from the language of the District Judge, he found as a fact that the heaving line was thrown, although he added that he doubted if the deckhands actually got the hawser on the after bitts.

[2] We think that, at the time while the Juniata was carrying out these maneuvers required by the orders of the steamship, it was incumbent upon those in charge of the navigation of the steamship to see that the Juniata was not exposed to unnecessary perils. As indicated above, the peril which resulted in damage could have been avoided by the use of signals, if timely given. If particular instructions are given, as we find were given by the navigators of the steamship which put the tug in the position she was in at the time she was struck, any maneuver of the ship without notice, resulting in damage, would be at the risk of the ship, and not of the tug. The Olympic, 224 Fed. 436, 140 C. C. A. 130; Stevens v. City of New York, 54 Fed. 181, 4 C. C. A. 268.

For these reasons, the decree is reversed.