### HOUSTON TOWING CO. v. UNITED STATES. THE NECHES. THE STEADFAST.

District Court, S. D. Texas, at Houston. January 2, 1928.

No. 129.

Towage ⟨key⟩12(1)—Collision of towing tug with ship she was assisting, when tripping on her own line, held due to her own fault.

A tug assisting navigation of a steamship by towing ahead with a line, was directed by the pilot to go to port to correct a sheer of the ship to starboard. In doing so, the tug fell astern, tripped on her line and was dragged astern, coming into collision with the ship, causing her injury. *Held*, that she assumed the risk in executing the maneuver, which was a proper one, and that the fault was her own, in that she was not properly handled.

In Admiralty. Suit by the Houston Towing Company, owner of tug Neches, against the United States, owner of steamship Steadfast. Decree for the United States.

J. Newton Rayzor, of Houston, Tex., for plaintiff.

H. M. Holden, U. S. Atty., of Houston, Tex.

HUTCHESON, District Judge. The steamship Steadfast, in charge of a pilot and assisted by the tug Neches on the Ship Channel at Parker's Bend, took a sheer to starboard, whereupon the pilot signaled the Neches to starboard its helm and get over to port to break the sheer, and also signaled the tug to hook her engines up and pull ahead at full speed. In the execution of this maneuver the tug fell astern, tripped on her line, and was dragged astern to against the side of the ship, causing serious damage to the tug, which, the line having been cast off, went across the channel and beached on the opposite side, where her stern sank.

This suit is for damages; the tug claiming that the Steadfast was at fault in increasing her speed after she had given the tug orders to go to her port, and in not checking her own speed and assisting the tug to extricate itself from the position of danger in which the maneuver had put it. The tug recognizes, since the ship was sheering, and the maneuver was executed in an effort to break the sheer and perform the service for which the tug was hired, that unless it can clearly show that negligent handling of the ship was the cause of the injury, it cannot recover; but it declares that it has adduced facts which have discharged that obligation and cites The Ancon (C. C. A.) 263 F. 886, as a case in point.

There the District Judge had exonerated the ship on the ground "that at the place of collision the Ancon would make her turn to port in the necessary navigation of the ship, and even though the Juniata was in the position she is conceded to have been in, the ship could make this change of course without notice or incurring liability if damage resulted." The Circuit Court reversed this finding, concluding that the ship was at fault for turning in and colliding with the tug, without signaling the tug that she was turning to port. They say: "At the time while the Juniata was carrying out these maneuvers required by the orders of the steamship, it was incumbent upon those in charge of the navigation of the steamship to see that the Juniata was not exposed to unnecessary perils. * * * If particular instructions are given, as we find were given by the navigators of the steamship which put the tug in the position she was in at the time she was struck, any maneuver of the ship without notice, resulting in damage, would be at the risk of the ship, and not of the tug."

The facts there were that the first officer of the Ancon ordered the Juniata (the tug) to proceed to the port bow of the ship and take the ship's hawser from her bow. At this time the two vessels were proceeding parallel, but while the tug was carrying out the ordered maneuver the course of the steamship was changed two points to port. This change was effected without notice to the tug, and shortly thereafter and as the result of it the two vessels collided.

While I am inclined to believe that the decision of the District Judge in the case cited was correct, and that a tug employed to assist a ship, where the ship was doing the thing that the tug was helping her to do, must look out for the ship's actions, and take the chances of peril caused by what the ship would necessarily do in assisting the tug to carry out the maneuvers, it is not necessary for me to place my refusal to decide this case in favor of libelant on any difference of opinion with the Circuit Court of Appeals in that case, for the facts here are entirely different.

Here the ship did not change her course. She was in the sheer when the maneuvers began, and she was going in the same direction when the collision occurred, and there is no satisfactory proof that the increase in her speed was in any manner responsible for the collision. I think the evidence establishes that the tug pulled too far over toward the bank; that she did not execute the maneuver properly; that she should, as soon as she got her position to port, have straightened up and gone down the stream with the ship; and that the primary fault was in the failure of the tug to take her position quickly and properly under the orders of the pilot.

But, if mistaken in this, I think it absolutely clear that the collision occurred because, and only because, of the wholly negligent and dangerous handling of the tug by the captain in hanging on to the ship far beyond the point of safety; nor is there any comfort to libelant in the fact that the pilot failed to sound his whistle. He did give the signal by megaphone, so that some on the tug heard, and others could have heard, if they had been attending to their business.

But, apart from signals, it was the duty of the captain of the tug to cast the line off with the mechanism provided for that purpose, just as soon as he saw that his tug was tripped, and this was evident to him and to every one else, according to the great weight of the testimony, when the tug was 100 to 150 feet away from the ship. It was the captain's stubbornness in trying to hold on far beyond the time when he could be of any help

to the ship, or himself either, that caused the trouble.

It is an ordinary consequence of such a maneuver that, if the tug does not get away promptly enough to keep ahead of the ship, she is likely to be tripped, and it was the duty of those operating the tug to look out for the safety of the tug, to see that the line was so attached as to permit its being immediately cast off when danger became apparent, and to cast it off.

It was not the duty of the pilot to warn the tug of danger arising from its own maneuvers; it was its duty to execute those maneuvers as prudence required under the circumstances as they developed. Had the tug executed the maneuvers properly, or had the captain ordered the line cast off when the danger was first apparent, no injury could have occurred. Or had the line loosened readily, when, even though late, he did undertake to do it, no injury would have occurred.

Decree for respondent.