

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-7-2007

# In Re: Moran Towing

Precedential or Non-Precedential: Precedential

Docket No. 06-2099

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"In Re: Moran Towing " (2007). *2007 Decisions.* Paper 509.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/509

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-2099

———

IN THE MATTER OF THE COMPLAINT
OF MORAN TOWING CORPORATION,
AS OWNER OF THE TUG JOHN TURECAMO,
FOR EXONERATION OR LIMITATION OF LIABILITY

JOMAR SHIPPING & TRADING, INC. & KRISTEN
NAVIGATION, INC.,

<u>Appellants</u>.

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cv-06410)

District Judge: Honorable Clifford Scott Green

———

Submitted pursuant to Third Circuit L.A.R. 34.1(a)
March 13, 2007

Before: FUENTES, VAN ANTWERPEN, and SILER,[*] <u>Circuit
Judges</u>.

(Filed: August 7, 2007)

Stephen J. Galati
George R. Zacharkow

———

[*] The Honorable Eugene E. Siler, Jr., Senior United States
Circuit Judge for the Sixth Circuit, sitting by designation.

John Mattioni
Mattioni Limited
399 Market Street
Suite 200
Philadelphia, PA 19106

     Counsel for Moran Towing.

Stephen M. Calder
Palmer, Biezup & Henderson
620 Chestnut Street
956 Public Ledger Building
Philadelphia, PA 19106

     Counsel for Appellants.

———

OPINION OF THE COURT

———

SILER, Circuit Judge.

In June 2001, the M/V Astro Libra ("Astro Libra"), a Greek flag tanker owned by Jomar Shipping & Trading, Inc. ("Jomar") and managed by Kristen Navigation, Inc. ("Kristen"), attempted to dock at the Fort Mifflin Terminal in the Port of Philadelphia, with assistance contractually provided by Moran Towing Corporation ("Moran"). As the Astro Libra neared the Mifflin Terminal, the assigned docking pilot, Thomas Sullivan, boarded the vessel to execute the required docking maneuvers. Sullivan immediately noted that the vessel was traveling faster than appropriate and he attempted to slow the vessel in order to perform the docking maneuvers.

While the Astro Libra attempted to slow and dock, the John Turecamo, one of the assisting tugs that Sullivan positioned around

the Astro Libra, began to take on water as a result of the Astro Libra's movements. Captain Dominic Rizzo, the John Turecamo's pilot, took emergency corrective action by moving the tug to the rear of the Astro Libra. However, the forces from the Astro Libra's movements overwhelmed the tug and it eventually collided with the Astro Libra's propellers, resulting in extensive damage to the propellers of both the John Turecamo and the Astro Libra.

Jomar and Kristen (collectively "Claimants") sought monetary damages from Moran, *in personam*, as well as the tug John Turecamo, *in rem*, for damages caused in the collision. Moran filed this admiralty action under the Limitation of Shipowners Liability Act, 46 U.S.C. § 183 *et. seq*., repealed by Pub. L. No. 109-304, § 19, 120 Stat. 1485, 1710 (October 2006), requesting exoneration from, or a limitation of liability for, claims arising out of the collision. Moran also filed a counterclaim for damages to the John Turecamo.

Following a bench trial, the District Court issued a memorandum opinion, including findings of fact and conclusions of law which addressed the issue of liability. It concluded that: (1) the collision was caused solely by the negligence of the Astro Libra's pilots;[1] (2) the negligent pilots were not employees of Moran; (3) neither Captain Rizzo nor other Moran employees acted negligently; (4) the John Turecamo was seaworthy; and (5) the Claimants were liable for damages caused to the John Turecamo. The Court entered an order exonerating Moran and the John Turecamo from all claims and scheduled a hearing on the issue of damages.

Claimants assert five grounds on appeal, all of which they contend are subject to plenary review. However, Claimants seek to set aside the judgment of the District Court, and we may do so only if we conclude that the court's findings of fact are clearly erroneous or its conclusions of law are erroneous. *See* Fed. R. Civ.

---

[1] The District Court found that Sullivan was an independent contractor who was under the control of the Master of the Astro Libra. Therefore, for purposes of liability, the court concluded that Sullivan was not an employee of Moran.

P. 52(a); *McAllister v. United States*, 348 U.S. 19, 20 (1954).

The Claimants challenge the District Court's conclusion that the negligence of the Astro Libra's pilots was the sole cause of the collision. Essentially, this claim has two components: (1) that Sullivan was a Moran employee, not an independent contractor, and that his negligence should be imputed to Moran as his employer; and (2) that Captain Rizzo, a Moran employee, was negligent in piloting the John Turecamo. In neither of these arguments, however, do Claimants identify a finding of fact that is clearly erroneous.

First, the District Court's conclusion that Sullivan was an independent contractor subject to complete control by the Astro Libra's Master, and not Moran, is amply supported by the record. Sullivan was a self-employed pilot affiliated with the Docking Pilots Association ("DPA"), whose members provided docking pilot services to companies other than Moran. Sullivan's charges were invoiced to Claimants' local agent through DPA, not Moran.

Moreover, Claimants contracted directly with Sullivan, and all contracts and invoices between the parties included a pilotage clause stating that the docking pilots were "borrowed servants" of the contracting ship. In upholding a similar clause relieving a tug operator from liability for negligent pilotage in *Sun Oil Co. v. Dalzell Towing Co.*, 287 U.S. 291 (1932), the Supreme Court noted that such a provision "is an application of the well-established rule that when one puts his employee at the disposal and under the direction of another for the performance of service for the latter, such employee while so engaged acts directly for and is to be deemed the employee of the latter and not the former." *Id*. at 294-95 (citing *Denton v. Yazoo & M.V.R. Co.*, 284 U.S. 305, 308 (1931)).[2] Therefore, the District Court's imputation of Sullivan's negligence to the Astro Libra, and not Moran, is not clearly

---

[2] This rule applies with even greater force here because Sullivan, the "borrowed servant," was not an employee of Moran.

4

erroneous.[3]

Similarly, the Court's conclusion that Captain Rizzo's piloting of the John Turecamo was not negligent is not clearly erroneous. The sheer,[4] which was a contributing factor in the collision, indicates to the contrary: that the operation of the Astro Libra, not the John Turecamo, was the negligent force in this collision. In *Atkins*, the court held that "[a] sheer by one vessel into another resulting in collision raises a presumption of negligence on the part of the sheering vessel," and that "the presumptively negligent party has the burden of coming forward with proof that the cause of accident in no way resulted from a failure of due care on its part." *Atkins*, 328 F.2d 68-69. The court noted that "a full showing of due care rebuts the presumption of negligence." *Id*. at 69. In this case, Claimants could not make a showing of due care because the District Court expressly noted that the Astro Libra was negligently operated.

Additionally, Captain Frank Reinbold, Moran's expert in tugboat handling and piloting, testified that Sullivan, who was under the control of the Astro Libra's Master, should not have pre-positioned the John Turecamo in the manner in which he did, and that once he realized the Astro Libra was traveling too fast, he should have ordered the tug to clear away. Captain Reinbold also testified that Captain Rizzo's maneuvering the tug to the stern of the Astro Libra during the chaotic sequence was likely the best alternative. This testimony alone is sufficient to preclude a finding of clear error.

Lastly, Claimants' attempt to bring this case in line with *The*

---

[3] Because the District Court's conclusion that Sullivan was not an employee of Moran is not clearly erroneous, Claimants' arguments that Moran breached the warranty of reasonable care and that it may not recover because it supplied the employee who caused the damage are meritless.

[4] "Sheer, in nautical meaning, is a deviation from the line of the course in which a vessel should be steered . . . ." *Atkins v. Lorentzen*, 328 F.2d 66, 68 (5th Cir. 1964).

*Olympic*, 224 F. 436 (2d Cir. 1915), is unpersuasive. In *The Olympic*, the master of an assisting tug voluntarily positioned the tug's bow approximately 100 feet in front of one of the Olympic's propellers. Due in part to suction created by the Olympic's maneuvers in the berthing process, the tug came into contact with one of the Olympic's propellers. *Id*. at 436-37.

The court imposed liability on the tug because it concluded that the Olympic was not at fault for the damage. *Id*. at 437. Central to that determination was that the Olympic was berthing in the usual way and that the tug should have been aware of the risks involved in the usual berthing process of such a large steamship. *Id*. Moreover, the court noted, "The Olympic did not order or invite the tug to put herself in position to push at any particular place. The tug master selected what he thought would suit, and hailed some one at that part of the steamer to throw him a line." *Id*.

However, *The Olympic* is inapplicable because the presumption of fault and causation applied against the tug in that case are simply not present in this case. Whereas the court in *The Olympic* noted that the vessel was operated non-negligently because it "undertook not to expose the tug to any extraordinary risk while engaged in the service," *id*., the District Court in this case explicitly found that the Astro Libra's operators were negligent because the Astro Libra was traveling faster than appropriate for the impending docking maneuvers. An additional point of distinction from *The Olympic* is that the tug in this case did not voluntarily position itself alongside the Astro Libra. Instead, Sullivan, as pilot of the Astro Libra, ordered the tug to its location at the vessel's starboard quarter.

AFFIRMED.

6