Yazoo & M. V. R. Co. *et al. v.* Denton.

(Division A. April 13, 1931.)

[133 So. 656. No. 29078.]

Bozeman & Cameron, of Meridian, and Chas. N. Burch, H. D. Minor, C. H. McKay, all of Memphis, Tenn., for appellants.

Hon. **J. V. Gipson**, of Meridian, for appellee.

**Cook, J.**, delivered the opinion of the court.

The appellee, Jesse H. Denton, instituted this suit in the circuit court of Lauderdale county, Mississippi, against the Yazoo & Mississippi Valley Railroad Company, the Illinois Central Railroad Company, and Jim Hunter, a porter, alleged to have been employed by both railroad companies, for damages for personal injuries alleged to have been sustained as a result of negligence of said porter in loading United States mail onto a train of the Yazoo & Mississippi Valley Railroad Company, and from a verdict and judgment for ten thousand dollars against all of the defendants, this appeal was prosecuted.

The declaration alleged that the appellee was a United States railway postal clerk on the train of the Yazoo & Mississippi Valley Railroad Company which stopped at Jackson, Mississippi, for the purpose of loading, unloading, and exchanging United States mail, that the appellant railroad companies furnished the appellant Hunter,

as their servant, to load and unload the mail into and from the door of the mail car in which the appellee was engaged in discharging his duties as mail clerk, and that it was the said Hunter's duty to take the sacks or pouches of mail from a truck which was placed on the platform by the door of the mail car and place them in the door of the car within reach of the appellee, whose duty it was to then read the labels on the pouches or sacks of mail and place them where they properly belonged in the car.

The declaration further alleged that, at the time the appellee received his injury, there was an unusually large amount of mail accumulated at Jackson on account of the flood stages of the Mississippi river, which had interrupted the railroad crossings between Vicksburg and St. Louis; that the appellant Hunter was loading the mail into the mail car faster than it could be removed and placed by the appellee; that the mail was being loaded as hurriedly as possible to prevent the delay of the train; that, under these conditions, the porter, Hunter, had stacked or piled up mail pouches or sacks in the door of the car to a height of about two feet; that he carelessly pitched or threw a large sack of mail over the pile of mail in the door of the car, and into the aisle thereof, which struck the appellee on his leg, thereby bruising it; and that, from this bruise and its subsequent developments, the appellee suffered much pain and a permanent injury.

The appellant Jim Hunter was a resident citizen of Hinds county, and process was served on him and the appellant Illinois Central Railroad Company in Hinds county, while the appellant Yazoo & Mississippi Valley Railroad Company was summoned by service on its agent in Lauderdale county. The appellant Hunter and the Yazoo & Mississippi Valley Railroad Company filed applications for a change of venue to Hinds county, the county of the household and residence of the said Hunter; the application of the said Hunter alleging that the Yazoo & Mississippi Valley Railroad Company was a domestic corpo-

ration domiciled in Hinds county, Mississippi, and that the cause of action accrued in that county, that the codefendant, the Illinois Central Railroad Company was a foreign corporation having no officer or agent in Lauderdale county; that no part of its line of railroad ran through that county, but that it did have agents and a line of railroad in Hinds county, and that the declaration stated no cause of action against the Yazoo & Mississippi Valley Railroad Company. The applications for a change of venue were overruled, and the action of the court in so doing is assigned as error.

Upon the overruling of this motion for a change of venue, the appellants filed a plea of the general issue and gave notice thereunder of special defensive matters, among others being, that it was expressly provided in the regulations prescribed by the United States, through its Postmaster General, governing transportation of mail by railroads, that "railroad companies must furnish the men necessary to handle the mails, to load the same into, and receive them from, the doors of the railway postoffice cars, and to load and pile the mails in, and unload them from, storage and baggage cars, under the direction of the transfer clerk, or clerk in charge of the car, if one is on duty;" that there was present on duty a transfer clerk and also a clerk in charge of the car, neither of whom was an employee of either of the defendants, but both employees of the United States government; that, in loading and piling the mail into the car, the appellant Hunter was in no way under the direction or control of the defendant railroad companies, or either of them, but was, on the contrary, under the direction and control of the transfer clerk, or clerk in charge of the car; that it was their duty to direct the said Hunter as to the manner in which he should load and pile the said mails into the car, and to control him therein; and that neither of the defendant railroad companies was under any duty or obligation to control or direct him in loading, piling, and handl-

ing the mail, nor was either of the defendant railroad companies in any way responsible or liable for any improper or negligent handling or loading of said mails by the said Hunter.

The uncontroverted testimony shows that the train on which the appellee was engaged as a mail clerk had stopped at Jackson; that the appellee was in the mail car engaged in loading or receiving into the car mail which had accumulated for transportation on that train, the mail being placed in the doorway of the car by the porter, Hunter; that the mail pouches or sacks were loaded on a truck at the Jackson depot, and the truck was pulled alongside of the door of the mail car, the floor of the truck being about eight inches lower than the floor of the car; that the porter stood on the truck and placed the bags of mail in the door of the mail car, and from there the appellee would take them to the proper place in the car. The mail compartment of this car was approximately twenty feet long by nine feet wide; and the side door into which the mail was being placed was two feet and ten inches wide and about six feet high. Across this door was a catcherarm which was used in taking the mail pouches from mail cranes while the train was in motion. The various iron rods constituting this catcher-arm were so placed across the door that there was left an opening through which mail could be loaded from the truck only two feet and ten inches wide at the floor and thirty-eight inches high on one side and twenty-eight inches high on the other.

By reason of flood conditions in the Mississippi river and the blocking of railroad crossings north of Vicksburg, there was a large accumulation of mail at Jackson, and an unusual amount of mail was being hurriedly loaded and placed in the door of the car faster than the appellee could remove it, with the result that a pile of mail approximately two feet high had accumulated in the door. At this point in the loading there remained on

the truck to be loaded four large bags of mail, weighing about one hundred twenty-five pounds each. One of these large bags was placed on top of the pile of pouches or bags in the door, and was removed therefrom by the appellee, and, while he was standing in the aisle of the car reading the label on this bag, the appellant Hunter took a second large sack of mail and shoved it under the catcherarm onto the pile of mail in the doorway, or threw it over the pile of mail into the aisle. Upon the latter point the evidence is conflicting. In any event, the sack of mail did not stop on top of the pile of mail, but fell into the aisle of the car, where it struck the appellee's leg, causing an injury thereto from which very serious consequences followed.

As to the relation of the appellant Hunter to the appellant railroad companies at the time of the injury, there was testimony to the effect that all the railroad employees at the Jackson depot were carried on the pay roll of the Illinois Central Railroad Company; that, under the postal regulations, the railroad companies transporting mail were required to furnish men to handle and load the mails into the cars; that, under an arrangement between the appellant railroad companies, the employees of the Illinois Central Railroad Company handled all the work pertaining to the Yazoo & Mississippi Valley trains while in the Jackson depot; and that the employees who were furnished to handle the mail worked under the sole and exclusive direction and supervision of the mail transfer clerk, or clerk in charge of the mail car, who were United States government employees; and that the railroad companies had no supervision over or control of such employees while they were engaged in handling and loading and unloading the United States mails.

The applicable postal rule and regulation which was offered in evidence reads as follows: "Sec. 1293. Railroad Companies shall furnish the men necessary to handle the mails, load them into, and receive them from, the

doors of the Railway postoffice cars, and to load and pile the mails in, and unload them from, storage and baggage cars, under the direction of the transfer clerk, or clerk in charge of the car, if one is on duty, except as provided in section 1290.''

In our opinion, the declaration states a cause of action against the Yazoo & Mississippi Valley Railroad Company in that it specifically charges that the appellee's injuries were the result of the negligence of the appellant Hunter, and that he was a servant of the said railroad, and was engaged in and about his master's business at the time the injury was inflicted. The said railroad company owns and operates a line of railroad in and through Lauderdale county; consequently the circuit court of that county had jurisdiction of the cause of action, and no error was committed in overruling the motion for a change of venue.

Upon the question of whether or not the appellant Hunter was guilty of negligence which caused or contributed to the injury sustained by the appellee, we think the peremptory instruction requested by him was properly refused, and no error as to this appellant which would warrant a reversal of the cause is assigned or argued; consequently, as to the appellant Hunter, the judgment of the court below will be affirmed.

The appellant railroad companies contend that the peremptory instruction requested by them should have been granted, because the appellant Hunter was not the servant of them in the work of loading the mails into the mail car, but that in performing this work he was under the sole supervision, direction, and control of the government employees.

The testimony as to the status of the appellant Hunter was to the effect that all railroad employees at the Jackson depot, including Hunter, were in the general employment of the Illinois Central Railroad Company, and, by some arrangement between that company and the Yazoo

& Mississippi Valley Railroad Company, the Illinois Central Railroad Company furnished all employees necessary to handle the work pertaining to the Yazoo & Mississippi Valley trains while in the Jackson depot; that, under the contract between the said railroad companies and the United States government for the transportation of the mails, and the rules and regulations governing the handling and transportation of mail, the railroad companies were required to furnish the men necessary to handle the mails, load them into, and receive them from, the doors of the railway postal cars, and to load and pile the mails in, and unload them from, storage and baggage cars; that, in pursuance of, and in compliance with, section 1293 of the Postal Rules and Regulations so requiring, the appellant Hunter was designated to so handle the mails on the day that the appellee received his injury; and that, while he engaged in these duties, he was under the direction and control of the United States mail clerk, or clerk in charge of the mail car, if one was on duty. The testimony was to the further effect that, on the days the porter, Hunter, was designated to handle the mails, he was engaged exclusively in the mail service, loading mail onto trucks in the mailroom at the depot, carrying it to the various trains, and loading it into the postal cars. The appellee testified that he was neither a transfer clerk nor the clerk in charge of said mail car, but the testimony shows that the clerk in charge was present in the mail car while the mail was being loaded, and at the time of the accident, and the transfer clerk was present while the mails were being loaded and at the time of appellee's injury. The appellee and the other two clerks who were in the car stated that neither of them had any authority to supervise or control the porter, Hunter, but this testimony was in direct conflict with section 1293 of the Postal Rules and Regulations, quoted above; and it was admitted that, where these rules and regulations covered any matter, they controlled, and that,

under these rules and regulations, the porter was loading mail under the direction and supervision of the transfer clerk or clerk in charge.

From the very nature of the employment of the porter, Hunter, and the character of work in which he was engaged at the time of appellee's injury, it would appear to be necessary for the government employees engaged in receiving and placing the mail in the car to have supervision and control of those engaged in delivering it into the car; and to so fix this right of supervision and control was the manifest purpose of section 1293 of the Postal Rules and Regulations, quoted above. The liability of a master for a negligent act for one who is in his general service, but at the time of the act is engaged in the service of third person, was fully discussed by the Supreme Court of the United States in the case of Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 254, 53 L. Ed. 480, where it was said: "That the master is answerable for the wrongs of his servant, not becsause he has authorized them nor because the servant, in his negligent conduct, represents the master, but because he is conducting the master's affairs, and the master is bound to see that his affairs are so conducted that others are not injured. . . . The master's responsibility cannot be extended beyond the limits of the master's work. If the servant is doing his own work or that of some other, the master is not answerable for his negligence in the performance of it. It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other,

for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, —a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work.''

Under their contract and the rules and regulations of the government in reference thereto, the obligation assumed by these railroad companies with reference to handling mails was not to load and unload them, but was specifically limited to furnishing the men necessary to handle the mails, load them into, and receive them from, the doors of the railway mail cars, which was to be done under the direction of the mail transfer clerk, or clerk in charge of the car, if one was on duty; and, in the matter of loading mails into the post office cars, the porter furnished for that purpose was not engaged in the business of the railroad companies, but was engaged in and about the business of the government. As was said by the Circuit Court of Appeals in the case of Burgess v. Standard Oil Co., 262 F. 767, "the sole reason why the master is responsible for the wrongs of his servant is because he is doing the master's business." It is admitted that the porter, Hunter, was in the general employment of the appellant railroad companies, but that circumstances does not fix liability against them for his negligence, "if he was not in point of fact, their servant at the time, in the

sense of being actually employed to do their work."
Rouke v. White-Moss Colliery Co., L. R. 2 C. P. Div. 205.

That the status of the porter, Hunter, at the time of his alleged negligent act while loading mail into the post office car was not that of a servant of the appellant railroad companies is determined by the fact that he was at the time engaged in the business of the government, under the expressly reserved right of the government employees on the car to supervise and control him in doing the work. For the reasons above indicated, we conclude that the peremptory instruction requested by the appellant railroad companies should have been granted; consequently the judgment of the court below, in so far as they were held liable to the appellee, will be reversed, and judgment will be entered here for them.

Affirmed in part, and reversed in part.