DENTON *v.* YAZOO & MISSISSIPPI VALLEY RAILROAD CO. ET AL.

No. 242. Argued December 11, 1931.—Decided January 4, 1932.

Mr. *John P. Bramhall,* with whom *Mr. James E. Mc-Cabe* was on the brief, for petitioner.

Mr. *H. D. Minor,* with whom *Messrs. Charles N. Burch, R. V. Fletcher, A. S. Bozeman,* and *C. H. McKay* were on the brief, for respondents.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The petitioner, a United States railway postal clerk, sustained an injury due to the alleged negligence of one Hunter, a porter in the general service of the two railroad companies named as respondents. Hunter was hired and paid by the Illinois Central Railroad Company. At the time of the injury he was engaged in loading United States mail into a mail car, under the direction of a United States postal transfer clerk, and was not, as to that work, under the direction or control of either of the railroad companies.

The mail was being transported by the railroad companies under c. 261, §5, 39 Stat. 412, 429, U. S. C., Title 39, § 541, which requires all railway common carriers to transport such mail " in the manner, under the conditions, and with the service prescribed by the Postmaster General." A regulation of the Postmaster General, adopted by authority of this statute, provides:

" Section 1293. . . . 2. Railroad companies shall furnish the men necessary to handle the mails, to load them into and receive them from the doors of railway post office cars, and to load and pile the mails in and unload them from storage and baggage cars, under the direction of the transfer clerk, or clerk in charge of the car, if one is on duty, except as provided in Section 1290. Mails intended for delivery to postal clerk shall never be placed in a postal car unless there is a clerk on duty to receive and care for them."

Petitioner brought an action in a Mississippi state court of first instance, against the railroad companies and

Hunter, to recover damages for the injury, joining the railroads upon the theory that, in performing the work of loading the mail, Hunter was their servant. A verdict against all of the defendants was returned by the jury, and a judgment thereon entered. The judgment, as to the railroad companies, was reversed by the state supreme court on the ground that what Hunter was doing at the time of his alleged negligent act, was not for them but for the United States. 160 Miss. 850; 133 So. 656.

Whether the railroad companies may be held liable for Hunter's act depends not upon the fact that he was their servant generally, but upon whether the work which he was doing at the time was their work or that of another, a question determined, usually at least, by ascertaining under whose authority and command the work was being done. When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former. This rule is elementary and finds support in a large number of decisions, a few only of which need be cited. In *Standard Oil Co.* v. *Anderson,* 212 U. S. 215, 220–225, this court said:

" The servant himself is, of course, liable for the consequences of his own carelessness. But when, as is so frequently the case, an attempt is made to impose upon the master the liability for those consequences, it sometimes becomes necessary to inquire who was the master at the very time of the negligent act or omission. One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person with all the legal consequences of the new relation.

" To determine whether a given case falls within the
one class or the other we must inquire whose is the work
being performed, a question which is usually answered by
ascertaining who has the power to control and direct the
servants in the performance of their work. Here we must
carefully distinguish between authoritative direction and
control, and mere suggestion as to details or the necessary
coöperation, where the work furnished is part of a larger
undertaking.

" In many of the cases the power of substitution or dis-
charge, the payment of wages and other circumstances
bearing upon the relation are dwelt upon. They, how-
ever, are not the ultimate facts, but only those more or
less useful in determining whose is the work and whose is
the power of control."

And see *Linstead* v. *Chesapeake & Ohio Ry. Co.*, 276
U. S. 28; *Harrell* v. *Atlas Portland Cement Co.*, 250 Fed.
83, 85; *Brady* v. *Chicago & G. W. Ry. Co.*, 114 Fed. 100,
107; *Wyllie* v. *Palmer*, 137 N. Y. 248, 257; 33 N. E. 381;
*Higgins* v. *Western Union Telegraph Co.*, 156 N. Y. 75, 78;
50 N. E. 500; *Cotter* v. *Lindgren*, 106 Cal. 602, 607; 39
Pac. 950; *Rourke* v. *White Moss Colliery Co.*, L. R., 2
C. P. Div. (1876–1877) 205.

The statutory obligation imposed upon the railroad car-
riers is simply to transport mail offered for transportation
by the United States. They are not required to handle,
load or receive mail matter, but only to furnish the men
necessary for those purposes. The men so furnished han-
dle the mails and load them into, and receive them from,
the railway post office cars, as the regulation prescribes,
" under the direction of the transfer clerk, or clerk in
charge of the car." The work they do is that of the gov-
ernment. It is said that " direction " means nothing more
than the right to point out or indicate to the men fur-

nished the disposition to be made of the mail. The scope of the word, as it is here used, is not to be thus limited. The phrase, "under the direction of the transfer clerk," would be practically meaningless unless it comprehended the power to supervise and control the movement. Obviously, as the evidence shows, a direction by the transfer clerk carries with it the duty, on the part of the men directed, to obey, and has, and was intended to have, the force of a command. See *Warner Valley Stock Co.* v. *Smith,* 165 U. S. 28, 34; *Kellyville Coal Co.* v. *Bruzas, 224* Ill. 595, 600; 79 N. E. 309.

The *Anderson* case, *supra,* and *Driscoll* v. *Towle,* 181 Mass. 416; 63 N. E. 922, are relied upon by petitioner to sustain the verdict of the jury. In the *Anderson* case, a winchman in the general service of the Standard Oil Company was furnished by the company to a master stevedore under contract with it to load a ship with oil. The winchman, in operating the winch, depended upon signals to be given by an employee of the stevedore to determine the proper time for hoisting and lowering the cargo. The negligence charged was that a draft of cases had been lowered before receiving the signal. This court held upon the facts, in the light of the rule which we have just stated and discussed, that the power, the winch, and the winchman were those of the company, and that the company did not furnish *them,* but furnished the *work they did* to the stevedore; and that this work was done by the company as its own work, by its own instrumentalities and servant under its control. A judgment for Anderson against the company was affirmed.

In the *Driscoll* case the defendant was engaged in a general teaming business. Plaintiff was struck and injured by a horse or wagon driven by a servant of the defendant. This driver, for some time, had been carrying property for an electric light company under some

arrangement between that company and the defendant. He was told by an employee of the company, from time to time, what to do and where to go, and was sometimes directed to drive fast, in which event he did so. He selected his own route and had exclusive management of his horse. At the time of the accident he was going to get some supplies in pursuance of an order from the foreman of the company. It was held that there was evidence to go to the jury that the driver was the servant of the defendant. The court said that it fairly could be found that the contract between defendant and the company was an ordinary one by the defendant to do his regular business by his servants in the common way; that in such cases the one who employs the contractor controls the servant only in the sense that he indicates the work to be done; but that the person who receives such orders is not subject to the general orders of the one who gives them. " He does his own business in his own way, and the orders which he receives simply point out to him the work which he or his master has undertaken to do."

In each of these cases the facts plainly demonstrated that the work was that of the general master, and that in doing it, the servant had not passed under the direction and control of the person for whom the immediate work was being done, the latter being looked to not for commands, but for information. As already shown, the facts of the present case require a different conclusion.

*Judgment affirmed.*