## TEXAS EMPLOYERS' INS. ASS'N v. SUTTLES et al.

### No. 8994.

Court of Civil Appeals of Texas. San Antonio.

Feb. 1, 1933.

Rehearing Denied March 1, 1933.

Wood & Wood and Dan Moody, all of Austin, for appellant.

Morriss & Morriss, of San Antonio, C. H. Gilmer, of Rock Springs, and C. J. Andrews, of San Antonio, for appellees.

MURRAY, Justice.

Maida Suttles, Nell Suttles, Bob Suttles, Billy Suttles, and Irvin Mamie Suttles, hereinafter called claimants, are the widow and four minor children of deceased, G. M. Suttles, commonly called Mamie Suttles, who was killed July 9, 1930, in Kerr county by an accidental explosion of dynamite.

They sue under the Workmen's Compensation Act. Appellant was the insurance carrier at the time of the accident for Brown & Root, Inc., a corporation engaged in road and general construction contract work, and deceased was for eleven months and four days before his death in the employ of Brown & Root, as one of its foremen on sundry construction work which Brown & Root had been doing for a corporation known as Moody-Seagraves Ranch Properties, Inc. (which we shall refer to as Moody-Seagraves), in Kerr county. Moody-Seagraves had bought a large body of land in Kerr county, and Mr. Seagraves of that concern was improving that portion in question of this land, known as his home place, as a pleasure and recreation resort. Moody-Seagraves had been doing considerable other improvement on the land, other than that done by Brown & Root, the latter concern not being engaged in building construction, that is, constructing houses; therefore Moody-Seagraves also carried compensation insurance, their insurer being appellee Lloyds Insurance Company. So the two concerns which had been engaged in construction work on the land, one corporation, the owner, building a large number of houses and such like construction, carried insurance with one

Insurer, the appellee Lloyd's Casualty Company of New York, and the other, which was doing a general contracting and construction work on the land for Moody-Seagraves, carried its compensation insurance with appellant. In the course of about eleven months during which Brown & Root, Inc., had been doing construction work on this ranch for Moody-Seagraves they had constructed on the land, a rough and broken country, some nine miles of roadway, an airport, a golf course, a "Tom Thumb" golf course, or sunken garden, a target range, bridle paths, etc., and were engaged in constructing and had about completed a fish pond. In starting to put in a blast near this fish pond deceased met his death by premature, or accidental explosion. The total construction work which Brown & Root had thus done for Moody-Seagraves on the Seagraves home place amounted to "approximately $60,000.00," according to their superintendent, Mr. O. L. Neyland; $60,000 or $80,000, according to Wilson, foreman for the ranch company. In all its construction, deceased and his brother Homer Suttles were respectively foremen over respective gangs, and in charge of the work under Superintendent Neyland. Brown & Root maintained offices and camp and commissary and bookkeeper, and all tools, materials, and supplies, on the ground.

Part of Brown & Root's work on this land was being done by contract with any extras on what they termed "force account," that is account was kept for all time and materials expended or used on these extras, and Moody-Seagraves charged up by Brown & Root at cost plus 10 per cent. Both deceased and his brother Homer, as foremen continuously on their work, had instructions at all times from Brown & Root, through the superintendent, to undertake and do at any time any extra job which Moody-Seagraves, through its representatives, might request. In this way the bridle paths, target range, and several of these smaller improvements were constructed, and charged to force account. The particular job on which deceased was killed was the construction of a fish pond across Bear creek, a dry stream except for a seep spring in the basin, the work on which project included construction of a rock and masonry dam across the creek, and cleaning out the basin. The agreement, which was oral, made on the ground when the representatives of both concerns went over to look at the site, was that Brown & Root should receive between twenty-three and twenty-four hundred dollars for building the dam, and any extra work was to be paid for on cost plus. A few days before Suttles was killed, Mr. Neyland, the superintendent, went away to be gone several weeks, before he left, however, having taken Homer Suttles, the other foreman, brother of deceased, away from that job and sent him over into the Kimble county end of the place, to build a dam there for Mr. Moody, leaving deceased in charge to complete the fish pond job, and again, as usual, instructing deceased to do any extra work called for by Moody-Seagraves, keeping usual account for time and materials to be charged up on force account, or cost plus. About July 4th, Mr. Seagraves came out to the resort, and went with his foreman over to see this fish pond, which was between two and three miles from his residence, and while there, in conversation with deceased, who had his men at work on the project, requested deceased to have some large rocks and trees placed in the basin, as a shade for fish, and to blast out the seep spring back a distance of fifteen, eighteen, or twenty feet into the bank; which work deceased told him he would do. Mr. Seagraves also at the same time wanted an additional three or four feet of height added to the dam.

A few days later, on July 9th, while some of his men were still working on the project, the deceased foreman started to put in a blast to blast out the spring. At that time the foreman for Moody-Seagraves, Mr. Wilson, was near by, engaged with two of his men in digging a ditch from a nearby well, to drain water into the pond, and, in passing to put in the blast, deceased remarked to Wilson that he, deceased, was then going to set off the blast, and Wilson walked down to the spot with him. While deceased was preparing his caps and dynamite, the explosion occurred from which he died later in the day. Wilson was so near that he, too, was shocked and somewhat injured by the blast.

Deceased, who had been working constantly for more than eleven months in the employ of Brown & Root, as their foreman in charge of his gang of workmen, and who was receiving $5 a day straight time, or $150 per month, payable on the 5th and 20th of each month, was later paid, that is, his widow was paid, by Brown & Root for the nine days in July, including the day of his death; and Brown & Root were also later paid by Moody-Seagraves, according to the deposition of Superintendent Neyland "$40.00 or $50.00 for building fish traps out of rock in the bottom of the fish pond," but were not paid for blasting out the seep, as that work was never done. The premature explosion which killed deceased prevented that.

After claimants, the widow and children, presented their compensation claim to the board, and appellant disputed their liability, asserting liability of the Moody-Seagraves' insurer, claimants thereupon made both insurers parties; and after the board awarded compensation against appellant, discharging the Moody-Seagraves' insurer, and appellant having given notice and appealed, claimants, bringing both insurers in, likewise appealed and filed their suit; and, on trial, the two

suits were consolidated. Likewise appellant having appealed from judgment of the trial court, claimants, the widow and children, perfected their appeal as against the insurer for Moody-Seagraves, in order that no possibility might exist as to their right to recover compensation against one or the other of the insurers.

The case was tried before the court without a jury and judgment entered against appellant, Texas Employers' Insurance Association, in favor of claimants, for compensation for $20 per week for a period of 360 weeks, to be paid in a lump sum, amounting to $6,530.98. An appeal was taken by employers' insurance association.

No findings of fact and conclusions of law were filed, and none were requested, it, therefore, becomes our duty to presume that all issues of fact raised by the evidence were decided against the appellant and to uphold the judgment of the trial court, if there is sufficient evidence in the record to support it. Pennington v. Fleming (Tex. Civ. App.) 212 S. W. 303; Blewett v. Richardson Independent School Dist. (Tex. Civ. App.) 230 S. W. 255; Cooks', Waiters' & Waitresses' Union, No. 399 v. Theoharis (Tex. Civ. App.) 228 S. W. 984.

The evidence clearly shows that Mamie Suttles, the deceased, at the time of the fatal accident was on the payroll of Brown & Root, Inc.; that he was their vice principal in charge of a gang of workmen, engaged in completing a fish pond that Brown & Root had contracted to build; that at the time of the making of the contract extras were contemplated and the manner in which they were to be paid for was provided, that is on a cost plus basis; that deceased had been instructed to perform all extras requested by Moody-Seagraves or their representatives; that the blasting out of the spring was requested by Mr. Seagraves; that while preparing for this blasting deceased lost his life from an accidental explosion; that Brown & Root paid deceased wages for nine days in July, which included the day Mamie Suttles was killed; that Mr. Seagraves had been gone from the premises some four or five days when the explosion occurred; that the equipment and material used, or attempted to be used in this blasting was furnished by Brown & Root.

We feel that, under these facts and circumstances, no other conclusion can be reached other than that Mamie Suttles received his fatal injuries while in the course and scope of his employment by Brown & Root, Inc.

Appellant contends that Mamie Suttles, at the time of the injury, was engaged in the live stock industry and therefore cannot recover under the Workmen's Compensation Act (Rev. St. 1925, art. 8306 et seq., as amended). We cannot agree with this contention.

There is no evidence in the record that the water from the spring was to be used for any other purpose than for the fish pond, and it is shown that the building of the fish pond was a part of the general scheme to develop this ranch as a summer home, pleasure resort, and hunting and fishing lodge. This was construction work and not ranch work. Vol. 28 R. C. L. p. 718.

Appellant also contends that either Mamie Suttles had been lent to Mr. Seagraves or had left his duties and gone off at the request of a third person. We are unable to agree with this contention. We feel that the evidence in the case does not justify such a conclusion.

Appellant further contends that Mr. Seagraves had assumed control of Suttles and had undertaken to supervise the details of his work and that Suttles had thereby become the employee of Moody-Seagraves. We do not feel that the facts as above stated will bear out this contention.

Appellant further complains that the average weekly wage of the deceased should have been calculated under the provisions of subdivisions 1 and 2, § 1, art. 8309, R. S. We do not agree with this contention, but feel that the facts in this case justify the determining of the average weekly wage under the provision of subdivision 3, § 1, art. 8309, R. S., which provides, in effect, that for good and sufficient reasons the average weekly wages may be computed in any manner just and fair to both parties. Howard v. Texas Employers' Ins. Ass'n (Tex. Com. App.) 292 S. W. 529; Petroleum Cas. Co. v. Williams (Tex. Com. App.) 15 S.W.(2d) 553; Texas Employers' Ins. Ass'n v. Storey (Tex. Com. App.) 17 S.W.(2d) 458; Norwich Union Ind. Co. v. Wilson (Tex. Civ. App.) 17 S.W.(2d) 68; Tex. Ind. Ins. Co. v. Wingo (Tex. Civ. App.) 47 S. W.(2d) 397; Bankers Lloyds v. Pollard (Tex. Civ. App.) 40 S.W.(2d) 859; Ind. Ins. Co. v. Jago (Tex. Civ. App.) 49 S.W.(2d) 943.

Appellant further complains that the trial court erred in allowing interest prior to the date of the judgment on past due and unpaid installments. This question has been definitely decided against the contention of appellant in the following cases. Employers' Ind. Corp. v. Felter (Tex. Civ. App.) 264 S. W. 137; Consolidated Underwriters v. Saxon (Tex. Com. App.) 265 S. W. 143; Home Life & Accident Co. v. Orchard (Tex. Civ. App.) 227 S. W. 705.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Texas Employers' Insurance Association, appellant herein, insists in its motion for a rehearing that the cases of Maryland Casualty Company v. Donnelly (Tex. Civ. App.) 50 S.W.(2d) 388, and Denton v. Yazoo & Missis-

sippi Valley R. Co., 284 U. S. 305, 52 S. Ct. 141, 76 L. Ed. 310, support its contention, and, if followed by us, would require a reversal of this case on the theory that Mamie Suttles at the time of his fatal injury had left his employment by Brown & Root and had been lent to Moody-Seagraves. We do not agree with appellant's contention.

These two cases hold, and we believe it to be the law, that though a person may be in the general employ of one person, if he is lent to another person who assumes control over him and authority to direct and control both the manner and method of doing the work, such a servant becomes the special employee of such third person and ceases to be the employee of his general master.

We held in our original opinion and we reaffirm here that the facts in this case do not warrant the conclusion that Mamie Suttles had become the special employee of Moody-Seagraves.

In the case of Maryland Casualty Co. v. Donnelly, supra, Donnelly was working for Busby, who was engaged in the transfer business. Busby had a contract to haul material and deliver it to the south end of the plant. This he did and thereby completed his contract. After the material arrived at the end of the plant, the builder's foreman directed that the material be carried inside the plant. Donnelly undertook this work under the direct control of such foreman, who directed both the manner and method, of doing such work. We have pointed out that the facts in the present case are very different. It was Brown & Root's work to build the fish pond. The blasting of the spring was a part of this work. Suttles was therefore pursuing his master's business when he was injured.·

The fact that the work had been pointed out by Mr. Seagraves does not justify the conclusion that he had assumed to dictate the manner and method of doing same, and especially when Mr. Seagraves had been gone from the ranch for some five days when the injury occurred.

In the case of Denton v. Yazoo & Mississippi Valley R. Co., supra, the case was decided largely on the ground that a regulation of the Postmaster General, adopted by authority of a federal statute placed the control of loading mail in a mail car exclusively under the mail clerk and no one else. This controlling fact is not involved in the present case. However, the Denton v. Yazoo & M. V. R. Co. Case, supra, cites with approval the cases of Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480, and Driscoll v. Towle, 181 Mass. 416, 63 N. E. 922, which two decisions we feel uphold the decision we have made herein.

The motion for a rehearing will be overruled.