## GREAT LAKES BOAT BUILDING CORPORATION v. JASPERSON.

## SAME v. SMITH.

### Nos. 5041, 5042.

Circuit Court of Appeals, Seventh Circuit.

May 31, 1934.

Rehearing Denied July 21, 1934.

George L. Schein and Joseph M. Cohen, both of New York City, and Ernest Schein, of Chicago, Ill., for appellant.

Robert Branand, Jr., and Edward B. Hayes, both of Chicago, Ill., for appellees.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

There are involved two libels in admiralty growing out of an explosion on libelant Smith's yacht, causing damage thereto and personal injury to libelant Jasperson, the yacht's chef. The libels were heard together, and in each of them it was decreed that the libelant recover the damages sustained through the explosion, and the causes were referred to a commissioner to ascertain and report the amounts due libelants. The appeals are from these decrees.

The yacht was gasoline propelled, 88 feet long, and was built for Smith by appellant at its Chicago shipyards in the fall of 1930 and the spring of 1931. Its galley was about 6½ feet long, 12 feet wide at the floor, and about 8 feet high, extending forward from the engine room. The floor was laid upon beams which ran the entire width of the yacht and were securely nailed at their ends to the yacht's ribs, and further supported by heavy stanchions extending upward from the bottom of the boat near its sides. The ceiling of the galley was nailed to beams which were bolted to the yacht's sides. The bilge, which was underneath the galley floor, extended forward from the water-tight bulkhead, which was just forward of the engine room, to the peak of the vessel, and had a content of about 900 cubic feet. The galley was located largely to the starboard, and contained a sink, a refrigerator, a six-burner marine gas stove, and a water heater. A broiler was added to the stove shortly after the boat was delivered.

The fuel for this equipment was propane gas known as Wilco Blu-Flame gas, which is colorless, practically odorless, and readily combustible, about 1.5 times heavier than air, and highly explosive in a mixture with air containing from 2 per cent. to 7 per cent. of the gas. The gas in liquid form was contained in bottles which were placed in the stack located amidships on the upper deck; and thence it was piped down into the bilge and forward through this bulkhead, and up through the galley floor, connecting with the stove and the water heater.

Captain Clark, the master of the yacht,

416

made complaint of the stove or broiler, or both, and after some discussion it was agreed that if Smith provided a new stove and broiler appellant would install them without charge. Thereupon Wastell, the boat's steward, and Denne, appellant's superintendent, selected another stove, which was, on June 23, delivered to the yacht for installation. The new installation required the stove as well as the water heater to be placed in a different part of the galley. One Koder, a pipe fitter in appellant's employ, turned off the gas at the stack and disconnected the pipes at the stove and heater, turning them backward from the galley. He cut into the main gas pipe under the galley and inserted a square head steam cock, so that thereafter the gas in the supply pipe might be shut off and turned on near the galley, as well as at the stack.

After the new stove was in its place, but before the water heater was ready for connection, Captain Clark requested that the stove be temporarily connected with the gas so that it might be used. In order to do this it was necessary to plug up that branch of the gas pipe which led to the water heater, in order to prevent the gas, when turned on for the stove, from escaping through the open water heater pipe which branched off from the pipe leading to the stove. Koder undertook to do this by placing a gasket or cap, which he cut from a pasteboard box and treated with tallow, at the place near where the hot water gas pipe was given off, and screwed it into place, assuming it would effectively stop the flow of gas through the otherwise open hot water branch pipe. Koder testified that after turning on the gas he tested the pipe and joints, including the place where the gasket was inserted, and found no leaks. Thereupon the stove was turned over to the chef for such temporary use as he cared to make of it. The next day, in the afternoon, the yacht was run out into the lake to test its compass, and returning went to appellant's yards on the Chicago river, where it docked. The gas which Koder had turned off that morning at the new gas cock he again turned on, and he informed the chef that he could use the stove. A few moments afterwards Koder left the boat. The chef lighted some of the burners on the stove, and a very short time thereafter a violent explosion occurred which badly broke up things in the galley and the bilge thereunder and bodily lifted the galley roof, completely inverting it. The force of the explosion raised the hatch cover in the galley floor, as well as the floor itself, and forced outward by several inches the skin or sides of the boat near its peak.

Appellees' libels predicate the negligence of appellant upon the theory that its employee Koder negligently failed to stop the flow of the propane gas through the pipe which had been disconnected from the water heater by negligently and improperly applying a paper gasket, which was insufficient to prevent passage or seepage of gas through the gasket; that the gas, being heavier than the air, accumulated in the bilge below the galley floor until the mixture had attained explosive proportions, whereupon, on lighting the stove, or in some other manner, the mixture was caused to explode.

Appellant contends (1) that there was no negligence in the employment of the gasket as a temporary expedient to stop the flow of gas through the open pipe, and that the evidence does not show that the gas seeped or escaped through this gasket or pipe; and (2) that the evidence does not show that the explosion occurred in the bilge of the boat, nor indeed that the explosion was caused by an accumulation of propane gas.

The testimony and circumstances bearing upon these propositions are contradictory; but we find it unnecessary at present to consider them, in view of the conclusion we reach upon appellant's proposition 3, which is that Koder in connecting the stove, and in doing what he did to that end, was acting directly contrary to appellant's instructions and wholly under the direction of the master of the yacht, and that both of appellees were fully aware of such limit by appellant upon Koder's authority. The main witnesses for appellant testifying orally on the proposition were Koder and Superintendent Denne. Denne testified that on the 22d he and Captain Clark had a conversation in the galley in the presence of Steward Wastell and Chef Jasperson, in which Denne said to Clark it would take several days to complete the changes involved, and that he wanted the new stove and water heater and gas lines completed and tested and O. K.'d by himself before they were to use them, and that to this Captain Clark said, "All right."

Koder testified that on that day Denne instructed him to tear out the stove and heater preparatory to connecting up the new stove, and that when the new job was connected to notify him (Denne) to come over to make the test; that on the 23d the new stove was brought there, and later in the day Captain Clark, in the presence of Jasperson, Wastell, and one Hedeen, requested Koder

to give him a temporary hook-up on the new range, and Koder told him he could not do it, as he had strict orders from the superintendent not to hook up the stove or turn on the gas until the job was ready for Denne's inspection and had been inspected by him; that Clark said, "To hell with Mr. Denne. He's got nothing to do with this stove. We bought this stove. It's our property"; that Clark said he had perishable goods in the ice box and storage space and had to get it cooked or it would spoil; and that after Clark had asked three or four times Koder acceded to his insistence and made the temporary hook-up. Another witness, Hedeen, Koder's assistant on this job, testified that "the chef and the steward and the captain, Clark, seemed to want the stove hooked up," and that "Frank (Koder) didn't want to hook it up until he saw Denne."

If this testimony is true, it is, to say the least, extremely doubtful whether, in permitting the stove to be thus temporarily connected, Koder was acting for appellant. If, to the knowledge of appellees, Koder's authority was distinctly limited by his employer to removing the old equipment and installing the new, with express prohibition, to the knowledge of appellees, against the use of the stove until the connections were all made and the job inspected and tested by the superintendent, it is not readily perceivable how the employer could be held liable for these acts of Koder done against express orders of the employer, and upon the solicitation and direction of the captain of the yacht. See Denton v. Yazoo & M. V. R. Co., 284 U. S. 305, 52 S. Ct. 141, 76 L. Ed. 310; Standard Oil Co. v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480; Bertino v. Marion Steam Shovel Co., 64 F.(2d) 409 (C. C. A. 8).

There was contradiction of this testimony. Jasperson, on rebuttal, denied that such conversations took place in his presence. Neither party called Wastell, each stating he was unworthy of belief. All these witnesses testified in open court. Clark's testimony was given by deposition very shortly after the libels were filed. His cross-examination covers twenty-five pages of the printed transcript, but there were no questions put to him concerning these conversations, and nothing thereon appears in the deposition.

It also appears that shortly after the explosion Koder made statements of the accident in writing to different persons, including an insurance company, in which no mention whatever was made of either of these conversations. These circumstances might well tend to indicate that such a defense was not then thought of, and might impugn its good faith. In the course of the hearing, the presiding judge stated, in effect, that he did not believe Koder's testimony, and yet one of his findings of fact in each case was: "That Koder was instructed by respondent's superintendent, Alfred C. Denne, to dismantle the old stove, to assemble the new one, and to await Denne's inspection, test and approval of the work before putting the new stove into service. The libelant was advised of these limitations on Koder's authority." In the face of this finding, decrees were entered on each libel finding appellant guilty of the negligence charged and ordering an accounting of the damages which appellees sustained through the explosion.

It seems that appellant's answer contained no specific allegation of want of Koder's authority to temporarily connect the stove, and after the evidence had all been submitted appellant moved to amend its answer by including a paragraph to that effect. This the court at first granted, but later denied, apparently upon the ground that the amendment was not necessary, the inference being that the answer as filed sufficiently admitted of presenting that defense. We are extremely doubtful whether the answer as filed was broad enough to admit of presenting this defense, and we are of the opinion that the amendment as made and first allowed should have been permitted to stand.

In the above-indicated state of the record we are of opinion that the above-quoted finding of fact is so far at variance with the decrees of the court that the decrees should not be permitted to stand, but that they should be reversed, with direction to permit the requested amendment to be made, and to rehear the causes upon the evidence heretofore given and such further evidence (especially of Captain Clark) as either party may wish to adduce; and it is accordingly so ordered.

The costs in this appeal shall abide the ultimate outcome of the litigation.