**ESTATE OF Harold Douglas CARTER, et al., Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

Civ. A. No. 95–0369.

United States District Court, District of Columbia.

Oct. 31, 1995.

Warren Gary Kohlman, Bredholff & Kaiser, Washington, DC, Mark J. Rochon, Michele A. Roberts, Kohlman, Rochon & Roberts, Washington, DC, for plaintiffs.

George C. Valentine, Nicholas Patrick Miller, Office of Corporation Counsel for DC, Washington, DC, for District of Columbia.

Madelyn Elise Johnson, Assistant U.S. Attorney for DC, Washington, DC, Paul Lawrence Knight, Sharp & Lankford, Washington, DC, for Officers Robert W. Kolsch and David S. Reynolds.

### MEMORANDUM OPINION AND ORDER

PAUL L. FRIEDMAN, District Judge.

Plaintiffs, the Estate of Harold Douglas Carter and the deceased's mother, Bettye J. Carter, bring this action against the District of Columbia and two individual United States Park Police officers, Robert W. Kolsch and David S. Reynolds, regarding the death of Mr. Carter. The District of Columbia moves to dismiss the action as to itself, arguing that the Court lacks subject matter jurisdiction and that plaintiffs fail to state a claim upon which relief can be granted. Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P.

The Court, having reviewed and considered the entire record, concludes that defendant District of Columbia is entitled to be dismissed from the case.

### BACKGROUND

According to the complaint, on April 19, 1994, at approximately 4:30 p.m., Officers Robert Kolsch and David Reynolds of the United States Park Police witnessed a traffic violation. They chased the automobile, which was driven by Mr. Carter. The automobile did not come to a stop until it hit a fence protecting a sidewalk on the 600 block of L Street S.E.. The officers approached the automobile and requested that Mr. Carter produce his driver's license. Mr. Carter moved over to the passenger side of the vehicle, at which point one of the officers shot Mr. Carter in the leg. Mr. Carter exited the vehicle, jumped over the four-foot fence and fled on foot from the police. Officers Kolsch and Reynolds allegedly opened fire and shot Mr. Carter in the back several times. The officers placed his hands behind his back and handcuffed him. Approximately 20 minutes later, Mr. Carter was pronounced dead at Washington Hospital Center.

Plaintiffs bring claims against Officers Kolsch and Reynolds under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Count I) and against the District of Columbia under 42 U.S.C. § 1983 (Count II). They also bring wrongful death (Counts III and V) and survival actions (Counts IV and VI) against both the individual officers and the District of Columbia.

### DISCUSSION

In considering a motion to dismiss, the Court accepts as true plaintiffs' factual allegations set forth in the complaint. *Summit Health, Ltd. v. Pinhas,* 500 U.S. 322, 325, 111 S.Ct. 1842, 1844–45, 114 L.Ed.2d 366 (1991); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994); *Tele–Communications of Key West, Inc. v. United States,* 757 F.2d 1330, 1334–35 (D.C.Cir. 1985). It may dismiss the complaint for failure to state a claim only if it appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. *Kowal v. MCI Communications Corp.,* 16 F.3d at 1276.

In bringing this suit, plaintiffs allege that the District of Columbia violated Mr. Carter's Fourth and Fifth Amendment rights by undertaking to have the U.S. Park Police patrol areas normally patrolled by officers of the Metropolitan Police Department and then by failing to properly train and supervise the U.S. Park Police Officers, Officers Kolsch and Reynolds, in performing these tasks. Plaintiffs' amended complaint also alleges that the District of Columbia is liable on a theory of vicarious responsibility or "negligent supervision."

The pivotal question raised by the District of Columbia's motion to dismiss is whether the District of Columbia may be held liable for the actions of the U.S. Park Police when these federal law enforcement officers are engaged in routine patrolling of District of Columbia streets. Plaintiffs allege that the District of Columbia "undertook to have the U.S. Park Police patrol areas normally patrolled by the 5th District of the Metropolitan Police Department" and that Officers Kolsch and Reynolds therefore were agents of the District of Columbia. Amended Complaint ¶¶ 20, 34. As such, plaintiffs allege that the District of Columbia had an affirmative duty to train the officers and to supervise the actions and conduct of the U.S. Park Police. Amended Complaint ¶ 20. Plaintiffs also argue that the District of Columbia is vicariously liable for the acts of the Park Police officers. Pls.' Opp'n to Def.'s Mot. to Dismiss at 3. Under this theory of "negligent supervision," liability originates in the contractual relationship between the District of Columbia and the federal government. *Id.*

The Court understands plaintiffs' allegations to be an attempt to establish liability against the District of Columbia under the borrowed servant doctrine. In *Dellums v. Powell,* 566 F.2d 216 (D.C.Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3147, 57 L.Ed.2d 1161 (1978) (*Dellums II* ), the District of Columbia Circuit explained the doctrine: "If the borrowed servant commits a tort while carrying out the bidding of the borrower, vicarious liability for that tort attaches to the borrower and not to the general master." *Id.* at 220. The court cautioned, however, that "there is a presumption that an actor remains in his general employment 'so long as by the service rendered another, he is performing the business entrusted to him by the general employer.'" *Id.* at 221 (quoting RESTATEMENT (SECOND) OF AGENCY, § 227 note 6, comment b).

*Dellums II* involved the interplay between the District of Columbia Metropolitan Police Department and the Capitol Police, which Congress has authorized to patrol Capitol buildings and grounds. In *Dellums II,* Chief Jerry V. Wilson of the Metropolitan Police Department had agreed that his officers would help the Capitol Police control demonstrators at the United States Capitol. *Id.* As a result of their arrest and detention, many demonstrators sued both federal and local law enforcement authorities for, among other things, false arrest. The District of Columbia sought to avoid liability by arguing that Chief Wilson was a borrowed servant of the federal government. Despite the fact that Chief Wilson and his officers acted pursuant to an agreement between the Capitol

Police and the Metropolitan Police, the court found that "[t]here can be no question that Chief Wilson was engaging in the 'business entrusted to him by [his] general employer,'" the District of Columbia. The Court therefore held that liability could only be shifted to the federal government if the United States had the "power to control and direct" Chief Wilson in the performance of his work. *Id.* at 221. The Court explained that there had to be "authoritative direction and control" over Chief Wilson by the United States and that the power merely to "suggest details or the necessary cooperation" was not enough. *Id. See Denton v. Yazoo & Mississippi Valley R. Co.,* 284 U.S. 305, 308–09, 52 S.Ct. 141, 141–42, 76 L.Ed. 310 (1932).

■ Taking the allegations of the Amended Complaint to be true, as the Court must on a motion to dismiss, at the time of the incident between Officers Kolsch and Reynolds and Mr. Carter, the U.S. Park Police were patrolling an area normally patrolled by officers of the Fifth District of the Metropolitan Police Department pursuant to an agreement between the two departments. Congress has granted the U.S. Park Police independent authority to patrol and make arrests anywhere within the District of Columbia. D.C.Code § 4–201 (1981 and Supp.1995); *see United States v. Alatishe,* 616 F.Supp. 1406, 1409–10 (D.D.C.1985); *Richardson v. United States,* 520 A.2d 692 (D.C.1987), *cert. denied,* 484 U.S. 917, 108 S.Ct. 267, 98 L.Ed.2d 224 (1987).[1] The alleged agreement that the U.S. Park Police would patrol certain areas normally patrolled by Metropolitan Police did not alter the jurisdiction or responsibilities of Officers Kolsch and Reynolds. *Dellums II,* 566 F.2d at 221. Thus, as in *Dellums II,* under the facts alleged by plaintiffs, there is no question that Officers Kolsch and Reynolds continued to perform the duties entrusted to them by their general employer.

The Court thus considers whether plaintiffs can show that the District had "authoritative direction and control" over Officers Kolsch and Reynolds. *Id.* The District of Columbia Code provides that the U.S. Park Police "shall have the same powers and duties as the Metropolitan Police of the District," D.C.Code § 4–201, but that they "shall be under the exclusive charge and control of the Director of the National Park Service." D.C.Code § 4–202 (1981 and Supp.1995). With these provisions, Congress restricted direction and control over the U.S. Park Police to the National Park Service. The District of Columbia cannot be held liable for failing to supervise and train federal law enforcement officers over whom it lacked the power to direct and control. There is no allegation of division of control or authority that would have permitted the District of Columbia, through the Chief of Police or his subordinates, to order Officers Kolsch and Reynolds to act to arrest someone or to veto their actions. *See Saffron v. Wilson,* 481 F.Supp. 228, 245–46 (D.D.C.1979). The alleged agreement between the U.S. Park Police and the District of Columbia to increase Park Police patrols in certain sections of the city can, at best, be considered cooperation between the two. Under *Dellums II,* a cooperation agreement is not sufficient to shift liability to the District of Columbia.

### CONCLUSION

Accepting the factual allegations set out in plaintiffs' complaint as true, the Court nevertheless concludes that plaintiffs have failed to allege any claim against defendant District of Columbia upon which relief may be granted. At no time did the District of Columbia have the authority to train, control or supervise the actions of any U.S. Park Police officers, including Officers Kolsch and Reynolds. Therefore, Counts II, V and VI of plaintiffs' original and amended complaints are dismissed. Accordingly, it is hereby

ORDERED that defendant's motion to dismiss is GRANTED. Plaintiffs' complaint is dismissed solely as to defendant District of Columbia.

SO ORDERED.

---

1. As defendants point out, the sections of the D.C.Code which set forth the powers of the Park Police predate Home Rule. *See* D.C.Code §§ 4–201 *et seq.* Thus, they are Acts of Congress.