KITCHENS, Justice,
dissenting:
¶ 31. The majority has concluded that the borrowed servant doctrine is inapplicable to the facts of this case. I respectfully disagree and dissent.
¶ 32. In Denton v. Yazoo & Mississippi Valley Railroad Company, 284 U.S. 305, 308, 52 S.Ct. 141, 76 L.Ed. 310 (1932), the Supreme Court of the United States said that whether a principal may be held liable for the acts of its servants
depends not upon the fact that he was their servant generally, but upon whether the work which he was doing at the time was their work or that of another; a question determined, usually at least, by ascertaining under whose authority and command the work was being done. When one person puts his servant at the disposal and under the control of anoth *361 er for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former.
Id. at 308, 52 S.Ct. 141. Further, in Quick Change Oil and Lube, Inc. v. Rogers, 663 So.2d 585 (Miss.1995), this Court held that:
The general rule, as applied at common law, is that a servant, in general employment of one person, who is temporarily loaned to another person to do the latter’s work, becomes, for the time being, the servant to the borrower, although he remains in the general employment of the lender. The borrower then becomes the employer to the exclusion of the lender. Application of the rule depends upon the question of whose work is being performed, and if the lender is to escape liability, it must appear that the servant is under the borrower’s exclusive control and direction as to the work in progress. When an employee voluntarily accepts and enters upon such an assignment, he ceases to be in the course of the employment by the lender or the general employer. However, while the “loaned servant” doctrine is generally considered applicable in the compensation field, a shift of emphasis will be noted as to the three pertinent questions involved, viz: (1) whose work is being performed, (2) who controls or has the right to control the workman as to the work being performed, and (3) has the workman voluntarily accepted the special employment.
Id. at 589 (emphasis in original) (citing Dunn, Mississippi Workers’ Compensation Law § 186 (1986)).
¶ 33. This Court has never decided specifically whether the borrowed servant doctrine applies to cases brought under the Mississippi Tort Claims Act; however, the United States District Court for the Southern District of Mississippi has considered the application of the doctrine to the Federal Tort Claims Act. See Banks v. United States, 623 F.Supp.2d 751 (S.D.Miss.2009).
¶ 34. In Banks, Yolanda Banks, a patient of the University of Mississippi Medical Center High Risk Obstetrics Clinic, died of a post-operative intra-abdominal abscess as a result of Dr. Andrew T. Allen’s alleged negligence. Id. at 752. At the time of treatment, Dr. Allen was a Captain in the United States Air Force, thus an employee of the United States.[3] Id. The plaintiff brought her medical malpractice action against the United States under the Federal Tort Claims Act. Id. The Government moved for summary judgment, “contending that it [could] not be held vicariously liable for Dr. Allen’s alleged negligence since at the time of his actions in diagnosing and treating Ms. Banks, Dr. Allen was the borrowed servant of UMMC.” Id. Applying Mississippi law, the federal district judge found Dr. Allen to have been the borrowed servant of UMMC and granted summary judgment in favor of the United States. Id. at 753, 756.
¶ 35. Though not controlling here, the federal court’s analysis in Banks is on point and persuasive. That court acknowledged that “Mississippi law recognizes the defense of the ‘borrowed servant’ where a person who is under the employment of *362 one employer may be temporarily loaned to another employer, in which circumstance ‘the borrower ... becomes the employer to the exclusion of the lender.’ ” Id. at 752-53 (quoting Quick Change, 663 So.2d at 592). The Banks court held that “[t]he record evidence in this case establishes beyond reasonable challenge that Dr. Allen was UMMC’s borrowed servant in connection with his residency at UMMC, and his diagnosis and treatment of Yolanda Banks during that residency.” Banks, 623 F.Supp.2d at 753. In that case, the record included the Memorandum of Understanding between UMMC and Keesler Medical Center delineating the duties of Dr. Allen and the obligations of UMMC. Id. at 754. Specifically, the agreement provided that Dr. Allen was expected, among other things, to provide patient care in accordance with “all hospital, state, and federal rules and regulations regarding patient care and ... seek advice in questionable circumstances.’ ” Id. Additionally, the agreement mandated that UMMC would “make available the clinical and related facilities needed for training. ...” Id.
¶ 36. In this case, the physician employment agreement between Dr. Gorton and Greenwood Leflore Hospital provided in relevant part, that “throughout the term of employment pursuant to this Agreement, [Dr. Gorton] shall maintain privileges and membership on the active medical staff of the Humphreys County Memorial Hospital and the courtesy medical staff of the Greenwood Leflore Hospital.... ” Additionally, the agreement required that Dr. Gorton “shall be responsible for providing appropriate care and treatment for patients at Gorton Clinic, Humphreys County Memorial Hospital, and the nursing home on an as-needed basis and when requested by [Greenwood Leflore] Hospital.... ” Further, Schedule A of the agreement required Dr. Gorton to be responsible for the “oversight and care of clinic and Humphreys County Memorial Hospital patients in accordance with Hospital/medical staff policies and accepted professional standards.” Established law and the facts before us lead logically to the conclusion that Dr. Gorton was the borrowed servant of Humphreys County Memorial Hospital (HCMH) at all relevant times. Banks, 623 F.Supp.2d at 753.
¶ 37. Moreover, under controlling Mississippi case law, Dr. Gorton was the borrowed servant of HCMH in accordance with the Quick Change three-part test. See Quick Change, 663 So.2d at 589. At the time of the Jordan child’s death, Dr. Gorton was required, pursuant to his employment agreement with GLH, to do the work of HCMH. It can be deduced from the language of Dr. Gorton’s employment agreement that HCMH had the right to control Dr. Gorton’s work performed at HCMH. Specifically, Dr. Gorton was required to provide care at HCMH “in accordance with Hospital/medical staff policies and accepted professional standards.” Such is a reasonable inference that can be drawn from the evidence. Finally, there is no indication in the record that Dr. Gorton did not voluntarily enter into the employment agreement with GLH that required him to be an active member of the HCMH medical staff. Because Dr. Gorton was the borrowed servant of HCMH, Ranee gave proper pre-suit notice of her claim against Dr. Gorton pursuant to Mississippi Code Section 11-46-11(1). See Miss.Code Ann. § 11^46-11(1) (Rev.2002).
¶ 38. Recently, in Tillis v. State, 43 So.3d 1127 (Miss.2010), this Court held that a nurse, employed by a contractor that provided medical services to a private correctional facility, was the dual employee of the contractor and the private correctional facility. In that case, Zenas Tillis was indicted for the simple assault of Kathy Hogue, a nurse who worked at Walnut Grove Youth Correctional Facility in ac *363 cordance with a contract between Health Assurance and Walnut Grove, in violation of Mississippi Code Section 4T — 4—1(4).[4] Tillis, 43 So.3d at 1128. Counsel for Tillis argued that the State’s case failed because Hogue was not an employee of Walnut Grove; rather, defense counsel asserted, Hogue was a contract employee of Health Assurance. Id. at 1130. The State responded that “while Walnut Grove might not write her paycheck, that is the only place she works.... She’s there every day.... Hogue was a de facto employee of Walnut Grove.” Id.
¶ 39. With regard to whether Hogue was an employee of Walnut Grove, the circuit court held that “as far as the interpretation ... that ostensibly it could be broadly interpreted that Hogue, in this setting, and under these circumstances, would qualify as being a person who would fit the term of employee.” Id. On appeal, this Court agreed and held that
[d]ual employment arises “when an employee is engaged in the service of two (2) employers in relation to the same act.” Ray v. Babcock & Wilcox Co., Inc., 388 So.2d 166, 167 (Miss.1980). See also Northern Elec. Co. v. Phillips, 660 So.2d 1278, 1282 (Miss.1995) (“[i]n Mississippi, one may be employed by more than one employer....”); Dependents of Roberts v. Holiday Parks, Inc., 260 So.2d 476, 478 (Miss.1972) (“[i]t is well settled that a person may be a servant of two or more masters at one time as to one act.”). Such dual employment may exist even if only one employer pays the employee. See Biggart v. Texas Eastern Transmission Corp., 235 So.2d 443, 444-45 (Miss.1970) (“[t]he fact that only one of the employers paid Big-gart (here River Construction Corporation) does not alter the fact that Biggart was in the service of Texas Eastern and Brown & Root, Inc., an employer-employee relationship between appellees and ... Biggart based on the element of control present at the time.”). Accordingly, the fact that Hogue’s paycheck came from Health Assurance is not dis-positive. Rather, given Hogue’s exclusive service to Walnut Grove, this Court concludes that she was a dual employee of both Walnut Grove and Health Assurance.
Tillis, 43 So.3d at 1132. Moreover, this Court opined in a footnote that “the borrowed servant doctrine [was also] applicable here, because Hogue was working exclusively at Walnut Grove, supplying medical services which Walnut Grove was constitutionally required to provide its inmates.” Id.
¶ 40. In this case, Dr. Gorton was clearly the borrowed servant of HCMH and the dual employee of both GLH and HCMH. Dr. Gorton’s employment contract was with GLH; however, the employment contract provided, in relevant part, that Dr. Gorton “shall maintain privileges and membership on the active medical staff of the Humphreys County Memorial Hospital and the courtesy medical staff of the Greenwood Leflore Hospital.... ” Further, Dr. Gorton was “responsible for providing appropriate care and treatment for patients at Gorton Clinic, Humphreys County Memorial Hospital, and the nursing home on an as-needed basis and when requested by [Greenwood Leflore] Hospital....”
*364 ¶ 41. The record is clear that Dr. Gor-ton was an employee engaged in the service of two employers in relation to the same act: the care and treatment of patients at Humphreys County Memorial Hospital. See Ray v. Babcock & Wilcox Co., Inc., 388 So.2d 166, 167 (Miss.1980). Moreover, there was no reason for Ranee to have had knowledge that Gorton was the employee of any hospital other than HCMH. Ranee’s child was admitted to Dr. Gorton’s service at HCMH, and the medical records reveal that at least one nurse and one other physician at HCMH discussed the child’s care with Dr. Gorton, via telephone.
¶ 42. Accordingly, I must respectfully disagree with the majority’s conclusion that Dr. Gorton was not the borrowed servant of Humphreys County Memorial Hospital. I would affirm the trial court’s denial of Dr. Gorton’s motion for summary judgment.
GRAVES, P.J., joins this opinion.

. At the time of the events in Banks, Dr. Allen was a Captain in the Air Force in his second year of a residency training program of the Air Force and UMMC, and was assigned to a two-month rotation in the UMMC High Risk Obstetrics Clinic. Banks, 623 F.Supp.2d at 753. Further, the "parameters of the training program were set forth by a 2003 Memorandum of Understanding (MOU) entered between UMMC and the Keesler Medical Center, Keesler Air Force Base.” Id.

. Mississippi Code Section 47-4-1(4) provides, in relevant part:
A person convicted of simple assault of an employee of a private correctional facility while such employee is acting within the scope of his or her duty or employment shall be punished by a fine of not more than One Thousand Dollars ($1,000.00) or by imprisonment for not more than five (5) years, or both.
Miss.Code Ann. § 47-4-1(4) (Rev.2004).