## Stott v. Louisville & N. R. Co.

(Decided Dec. 3, 1937.)

CHESTER L. RIGSBY and HUBERT SIRLES for appellant.

JAMES P. HELM, JR., TRABUE, DOOLAN, HELM & HELM and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 21, 1934, the appellant and plaintiff below, Henry E. Stott, was an employee in the United States mail· service in the city of Louisville, Ky.; his duties being those of chauffeur of a railway mail truck operated in the hauling of mail from the various railroad depots in Louisville to the post office, and vice versa. At about 9:25 p. m. on the day stated, he was loading his mail truck from a mail platform in the yards of the Tenth Street Depot of the appellee and defendant below, Louisville & Nashville Railroad Company, in that city, when a porter in the employ of the railroad company threw a sack of mail, weighing about 25 pounds, which struck plaintiff on the instep of one of his feet and slightly fractured some of the bones therein. To recover damages for the injury, plaintiff filed this action in the Jefferson circuit court against defendant, alleging that the porter in throwing the sack of mail so as to strike him did so carelessly and negligently and that he (porter) was in the employ of defendant and in the performance of his duties as such employee, which, it was claimed, rendered defendant liable for the amount of damages plaintiff sustained. The answer denied the material allegations of the petition, accompanied with a separate plea of contributory negligence, which plaintiff denied, and at the close of plaintiff's testimony at the trial of the issues the court sustained defendant's motion for a peremptory instruction for a verdict in its favor. From the judgment rendered on the directed verdict, plaintiff prosecutes this appeal.

The record discloses that the mail was carried from the mail car, from which it was taken by the porter, and it composed a part of the railroad train that brought it to Louisville; that he loaded it from that car onto a wheeled cart, and then moved it to a stationary platform upon which he unloaded it; that the mail truck was driven up to that platform, which was about 12 feet long, and its driver (plaintiff here) took it therefrom and put it into the truck and then carried it to the post office. It was while plaintiff was so engaged, and while the porter was engaged in unloading the mail from his cart on the platform, that the act of negligence complained of was committed. The case was correctly made to turn on the status of the accused porter at the time the injury to plaintiff was inflicted; it being insisted by counsel for plaintiff that he was then serving his master, the defendant; whilst counsel for the latter

insist that under what is known as the "Lent Servant Doctrine" he was serving the federal government, since under the postal laws of the United States, and regulations made thereunder, he was then subject to the orders and directions of the federal postal officers under whose charge he was performing the particular duty in which he was engaged at the time. Federal officers or employees having charge of the transportation of mail from depots at which it arrives, and transporting it to the post office in Louisville, were two clerks and one deputy, but neither of them was actually present at the time, nor does it appear that either of them was then on any portion of the railroad premises.

The argument on behalf of plaintiff takes somewhat of a wide range and enters to some extent upon a discussion of the doctrine as to when a servant is performing duties for his master so as to render the latter liable for any negligent act of the former. Such discussion is wholly beside the legal issue in the case, since if the accused servant in this case was serving his employer because the latter paid him for his time, and had the right to discharge him at any time, then the doctrine of respondeat superior would apply. But under the "Lent Servant Doctrine," relied on by defendant in this case, if it is applicable here, defendant would not be liable for the acts of the accused servant in this case if for the time being he was serving the lendee of his services, which in this case was the federal government. A great portion of the argument, when the issue is so narrowed, becomes irrelevant, which is likewise true of some of the cases cited and relied on by plaintiff's counsel.

Subsection 2 of section 1745 of the Federal Postal Laws and Regulations, reads: "Railroad companies shall furnish the men necessary to handle the mails, to load them into and receive them from the doors of railway postoffice cars and to load and pile the mails in and unload them from storage and baggage cars under the direction of the transfer clerk or clerk in charge of the car, if one is on duty, except as provided in Section 1742. Mails intended for delivery to postal clerk shall never be placed in a postal car unless there is a clerk on duty to receive and care for them;" while subsection 2 of section 2096, relating to the duties of federal transfer clerks, says in part: "Transfer clerks shall

supervise the handling and transfer of mails at railroad depots where they are stationed,'' etc.

The Supreme Court of the United States in the case of Denton v. Yazoo & Mississippi Valley Railroad Company, 284 U. S. 305, 52 S. Ct. 141, 142, 76 L. Ed. 310, had before it what we conclude is practically, if not completely, the identical question now under consideration involving the same postal law and regulations above referred to under substantially the same facts. That case was an appeal from an opinion of the Supreme Court of the state of Mississippi in which it, after reviewing many authorities and applying the developed facts to the same federal laws and regulations, held that at the time the railroad employee of the mail truck was injured by the porter throwing a sack of mail and striking him the porter was serving the federal government as a lent servant to it by the railroad company, and for whose acts the latter was not liable. The Mississippi opinion is published in 160 Miss. 850, 133 So. 656, where the facts are stated in more detail than is done by the Supreme Court of the United States in its opinion. The reader is referred to those publications for that information. It is sufficient for us to state that Denton, the plaintiff in that case, was a railway mail clerk, and the alleged negligent railroad porter was unloading mail from his cart into the postal railway car and struck the mail clerk having charge of it, and injured him; whilst in this case the injured person operated at the other end of the transfer line of the mail upon the railroad premises. That sole difference between the cases can have no possible bearing upon the merits.

The name of the offending railroad porter in the Denton Case was Hunter, and in applying the facts of the case to the applicable federal law, cited supra, the opinion said: ''Whether the railroad companies may be held liable for Hunter's act depends not only upon the fact that he was their servant generally, but upon whether the work which he was doing at the time was their work or that of another; a question determined, usually at least, by ascertaining under whose authority and command the work was being done. When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the

latter and not of the former. This rule is elementary and finds support in a large number of decisions, a few only of which need be cited. * * * The statutory obligation imposed upon the railroad carriers is simply to transport mail offered for transportation by the United States. They are not required to handle, load or receive mail matter, but only to furnish the men necessary for those purposes. The men so furnished handle the mails and load them into, and receive them from, the railway post office cars, as the regulation prescribes, 'under the direction of the transfer clerk, or clerk in charge of the car.' The work they do is that of the government. It is said that 'direction' means nothing more than the right to point out or indicate to the men furnished the disposition to be made of the mail. The scope of the word, as it is here used, is not to be thus limited. The phrase, 'under the direction of the transfer clerk,' would be practically meaningless unless it comprehended the power to supervise and control the movement. Obviously, as the evidence shows, a direction by the transfer clerk carries with it the duty, on the part of the men directed, to obey, and has, and was intended to have, the force of a command.''

It is argued, however, that no federal employee having authority of direction, or any sort of control, of the railroad porter was present in the instant case, and, therefore, the latter could not be regarded as under any sort of federal supervision at the particular time. That contention appears to be based upon the phrase, ''if one is on duty,'' found in the inserted subsection 2 of section 1745, supra, from the Federal Postal Laws and Regulations; but that phrase, in the connection employed, evidently means and is intended to apply to a case where the railway mail clerk was temporarily absent, and not to the transfer clerk. Besides, we do not think the ''Lent Servant Doctrine'' should be so narrowly applied so as, as said by counsel for defendant, to make it ''dependent upon whether the government agent is actually in the station, or has gone out temporarily for lunch or for some other purpose.'' His authority, delegated to him by the federal laws and regulations made pursuant thereto, is as effective and controlling in his absence as it is when he is present, since the fact of such federal control over the porter temporarily transfers the service he rendered in handling the mail, from that of his master or employer to the one he ren-

ders service as a lendee. We are convinced that it is our duty to follow the opinion of the Supreme Court, regardless of what might be contended to the contrary.

Wherefore, for the reasons stated, the judgment is affirmed.