**CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD COMPANY, a corporation, Plaintiff,**

v.

**POWERS FOUNDATION DRILLING COMPANY, a co-partnership composed of J. D. Powers and Powell W. Powers, Defendant.**

**Civ. No. 67–142.**

United States District Court
W. D. Oklahoma.

Dec. 31, 1968.

John A. Johnson, of Savage, Gibson, Benefield & Shelton, Oklahoma City, Okl., for plaintiff.

R. D. Looney, of Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

The Plaintiff operates a railroad. The Defendant is in the construction business, apparently specializing in the drilling or placement of bridge and other foundation piers. The Plaintiff has a bridge on its railroad line near Trenton, Missouri. One of the concrete piers of this bridge began to tilt due to river action and in 1962 the same was replaced by the Plaintiff and Defendant. The replacement was effected by drilling ten caissons around the existing concrete pier (5 on each side), supporting the bridge by the ten caissons and abandoning the concrete pier as a support even though the same remained in the river bed. In 1966 another pier of the same bridge began to tilt because of of river action and it was necessary that this pier be replaced in the same manner as the 1962 operation. To accomplish this replacement, the Plaintiff assigned to the project certain of its employees by assigning them to what was known as Composite Gang No. 1. J. R. Gulledge, a railroad employee, was foreman of the Gang. He had an assistant foreman. One of these assigned employees was Edward Brandel who received a personal injury on this project which precipitated this litigation. With reference to replacing this pier in the above manner, the Plaintiff entered into a letter contract with the Defendant whereby the Defendant agreed to furnish two men and certain equipment and tools [1] for installing ten caissons at the bridge for a basic monetary rate per week with overtime provisions. The two men so furnished by the Defendant were Paul Nation and Kenneth Miller.

Brandel was injured in the following manner: He was climbing upon or mounting the flat-car on which the Defendant's crane was situated by using the stirrup or ladder provided for that purpose on the car at which time a counterweight situated on the back of the Defendant's crane struck the core barrel which was then located on the bed of the flat-car. This impact occurred while the crane was being rotated by Nation, the operator of the crane, and in striking the core barrel the same Brandel as he was mounting the flat-car was caused to tilt in the direction of on the stirrup or ladder. The evidence is in conflict as to whether the core barrel actually struck or hit Brandel on any part of his body, but in either event he did step or fall backwards from the stirrup or ladder of the flat-car and then fell through an opening or hole in the bridge floor and downward onto a timbered checkerboard which had been erected around the concrete pier being replaced and which was situated below the bridge floor. This checkerboard had openings for each of the ten caissons to

[1]. Pursuant to this letter the Defendant furnished a crane with a sixty foot boom, a power driven drilling unit with a fifty foot telescoping Kelley, two augers, two buckets, a core barrel and a caisson turner. The Plaintiff furnished a railroad flat-car upon which the crane of the Defendant was placed and shipped to the job site and thereafter the crane was operated and utilized on said flat-car in connection with the bridge repair project. The Plaintiff furnished the fuel and oil for the operation of the equipment of the Defendant. The Defendant also furnished the ten caissons and some fishing tool rod for a further stipulated sum.

be drilled into the river bed around the existing concrete pier and also afforded a structure upon which certain work could be accomplished by the workmen. The evidence reveals that the core barrel upon being struck by the counterweight of Defendant's crane did not fall from the bed of the flat-car as a result of this impact but did fall over and came to rest on its side on the bed of the flat-car. All the evidence indicates that the core barrel was struck by the counterweight on the back of Defendant's crane.

■ After the accident Brandel sued the Plaintiff in a state court in Missouri under the provisions of the Federal Employers' Liability Act (FELA).[2] Proceedings under the FELA require a showing of negligence on the part of the railroad. Negligence of the injured railroad workman, if any, does not bar his right of recovery but may be considered in mitigation of his damages under the doctrine of comparative negligence. The Plaintiff tendered the defense of the Brandel action to the Defendant, asserting that the negligence of Nation in striking the core barrel with the crane he was operating imposed liability on the Defendant for Brandel's injury. The Defendant refused the tender as to both the defense of and liability for the Brandel action. The Plaintiff then settled the case with Brandel for $9500.00 which with necessary expenses cost the Plaintiff the total sum of $10,060.65. It is this sum which the Plaintiff seeks to recover herein from the Defendant on the basis that the Defendant through the alleged negligence of Nation, as Defendant's employee, caused the Brandel accident and Plaintiff is, therefore, entitled to be indemnified for the above sum by the Defendant.

The Defendant resists the Plaintiff's claim asserted herein alleging (1) that its two employees [Nation and Miller] were "loaned servants" to the Plaintiff at the time of the Brandel accident and by reason thereof any negligence of Nation in the operation of the crane was the negligence of the Plaintiff and not the Defendant, (2) that Brandel was guilty of negligence contributing to his accident and injury which bars a recovery herein by the Plaintiff against the Defendant, and, (3) that the Plaintiff was guilty of negligence with respect to the accident in allowing the said opening or hole in the bridge floor (through which Brandel fell) to exist during the work which bars a recovery herein by the Plaintiff against the Defendant. The Court has diversity jurisdiction of the case. A jury was waived and the case was tried to the Court.

■■ At the trial the parties agreed on the state of the law with respect to certain legal principles or rules involved regarding the issues as joined herein between the parties. These legal principles or rules as agreed upon by the parties are: The Plaintiff cannot recover herein if the two employees of the Defendant [Nation and Miller] were "loaned servants" to the Plaintiff at the time of the accident, 35 Am.Jur., Master and Servant, Section 541, pp. 970–971; or if Brandel was guilty of contributory negligence, Kennedy v. Pa. R. R. v. U. S. Steel, 282 F.2d 705 (Third Cir. 1960); or if the Plaintiff was guilty of active negligence as distinguished from passive negligence, 19 A.L.R. 3d 928 at pp. 931 to 935; United States v, Chicago, R. I. & P. R. Co., 171 F.2d 377 (Tenth Cir. 1948). The Court, therefore, must determine from the evidence presented, (1) if Brandel was injured by the negligence of an employee of the Defendant, or (2) if the two employees of the Defendant [Nation and Miller] were "loaned servants" to the Plaintiff and thereby Plaintiff's servants at the time of the accident and, if not, (3) whether Brandel was guilty of negligence contributing to his accident and, if not, (4) whether the Plaintiff was guilty of active negligence regarding the accident. The burden of proof re-

2. 45 U.S.C. § 51 et seq.

garding (1) above is on the Plaintiff and the burden of proof regarding (2), (3) and (4) as above set out rests with the Defendant.

## NEGLIGENCE OF NATION

■ As to (1) above, the Court finds from the evidence that Nation was guilty of negligence in the matter of the Brandel accident in that he did not move the crane which he was operating on its crawlers away from the core barrel resting on the bed of the flat-car before rotating the crane and thereby striking the core barrel with the rear of his crane in the rotating movement. In this determination, however, the Court has not decided whose employee Nation was at the time.

## THE "LOANED SERVANT" PROPOSITION

35 Am.Jur., Master and Servant, § 18, pp. 455–456, treats with the "lent servant doctrine" as follows:

"§ 18. *Lending of Employee to Another.*—One who has the status of general servant or employee may be lent or hired by his master to another for some special service so as to become, as to that service, the servant of such third person, the test being whether, in the particular service which he is engaged to perform, he continues to be under the direction and control of his master or becomes subject to that of the person to whom he has been lent or hired. Where an employee, with his consent, has thus been lent by his general employer to another person, he is deemed to have become, for all purposes of the relationship of master and servant, the employee of the borrower. For the time being, he is subject to the borrower's control and direction. However, the conclusion as to his status is the same regardless of the showing as to whether the person to whom he has been lent actually exercises his right of control or direction as to the details of the work, or simply sets the servant to do what is necessary, trusting to his expert skill for the result."

The above text at § 541, pp. 970–971, further discusses the doctrine as follows:

"§ 541. *Special Service for One Other than Employer.*—The fact that a person is the general servant of one employer does not, as a matter of law, prevent him from becoming the particular servant of another, who may be held liable for his acts. * * * An employer is not liable for injury negligently caused by a servant if the latter is not at the time in the service of the employer, but in the special service of another, although the question of liability is ultimately dependent upon the determination of who has the power to control and direct the exact time of the act in question. * * * A master cannot avoid liability for the negligent act of his servant by merely showing that at the time of the injury, he had loaned the servant to another; but he must also show that when he loaned him, he surrendered to the borrower the right to control and direct him."

The case of Du Vaul v. Miller, 114 F.Supp. 317 (D.C. Mo.1953), holds as follows:

"[1] The District Judge for the Western Division of Kentucky, in Fries v. United States, D.C., 76 F.Supp. 396, loc. cit. 398, quite pertinently quoted from a Kentucky decision, the fundamental or elementary principle applicable to cases of this kind:

'When one person puts his servant at the disposal and under the control of another for the performance of a particular service for the latter, the servant, in respect of his acts in that service, is to be dealt with as the servant of the latter and not of the former. This rule is elementary. * * *' Stott v. Louisville & Nashville R. Co., 270 Ky. 787, 790, 110 S.W.2d 1086, 1087.' * * *

57 C.J.S. Master and Servant § 566, p. 284, discusses the hired or loaned

servant doctrine and succinctly states the rule as follows:

'The usual test of liability for the acts of the servant is whether in the particular service in which the servant is engaged or which he is requested to perform he continues liable to the direction and control of his original master or becomes subject to the direction and control of the person to whom he is loaned or hired, or who requests his services'."

■■ The evidence presented to the Court indicates that the Defendant sent the crane and the other equipment to the job site on a flat-car owned by the Plaintiff. The two employees of the Defendant, Nation and Miller, drove to the job site by automobile and upon arrival reported to Mr. Gulledge the foreman of Composite Gang No. 1. The Court finds that thereafter, the work of these employees including the details thereof was under the general supervision and direction of Mr. Gulledge as foreman of the project. On certain occasions the assistant foreman gave orders changing the manner in which Nation and Miller were operating and an assistant foreman testified that he could have done the work of Nation in running the crane without any difficulty. The Plaintiff had a pile driver on the job and in each instance used the same to position the caissons in place for being drilled. The employees furnished by the Defendant and using the equipment furnished by the Defendant would then rotate each caisson and drill the same to the desired depth. In doing this, they would remove the material from the inside of each caisson by using the augers, core barrel and buckets. On at least one occasion, Nation did some maintenance work on some of the equipment owned by the Plaintiff. The Court finds and concludes from the evidence and in the circumstances of this case that the Defendant surrendered to the Plaintiff the right to control and direct both Nation and Miller in the performance of their work at this job site and that the Plaintiff assumed and ex-ercised such control including the details thereof throughout the project. The Court finds that this was a surrender of full control of Nation and Miller for the purposes of this project. In this connection, neither Nation nor Miller ever called on the Defendant for any instructions or advice in connection with the project or their work thereon. On the other hand, Mr. Gulledge was in active charge of the entire project and directed and controlled the details of the work of all workmen on the project including Nation and Miller. The foreman or his assistant, at any time, could stop or could continue the work and also could and did determine the way in which it was to be done not only with reference to the result reached but the method of reaching the desired result. In fact, the foreman frequently stopped and resumed work on the project as it was necessary to move out for the passage of trains. In addition, the employees regularly engaged by the railroad actively participated in many of the details of the drilling of the caissons to include the positioning of the same, changing tools on Defendant's crane and other significant matters. No superintendent or foreman or other person employed by the Defendant visited the job site at any time or attempted to exercise any control or direction over Nation or Miller. It thus appears without question that the Defendant surrendered all control over these two employees to the Plaintiff who made them a part of its Composite Gang No. 1 for the purpose of accomplishing the project. It further appears from the evidence and the Court finds that Nation and Miller consented to their transfer to the employment of the Plaintiff and, in fact, entered upon the service and submitted themselves to the direction and control of the Plaintiff.

Under the evidence and circumstances of this case, the Court finds and concludes that the two employees of the Defendant [Nation and Miller] who by contract were furnished to the Plaintiff, were "loaned servants" to the Plaintiff with full surrender of control and direction over their activities including the

details thereof for the purpose of completing the bridge pier project. Such being the case, the negligence of Nation at the project would also be and was the negligence of the Plaintiff. This prevents the Plaintiff from recovering herein against the Defendant.

This case could be disposed of on the "loaned servant" issue alone, but it is clear that Plaintiff may not recover in any event because of active negligence on the part of the Plaintiff as hereinafter set forth.

## CONTRIBUTORY NEGLIGENCE OF BRANDEL

First however, from the evidence presented, the Court fails to find Brandel to have been guilty of negligence contributing to his accident. The Court finds that Brandel and other railroad employees customarily changed tools on the boom line of the Defendant's crane or assisted therein; that with reference to several of the tools it required two men to effect a change thereof. The Court further finds from the evidence that preceding the Brandel accident, the crane was being rotated to change a tool; that Brandel was mounting the flat-car to make or assist in the making of the tool change; that this was within his customary duties to the knowledge of the crane operator; that he was mounting the flat-car by using the stirrup or ladder on the car provided for that specific purpose and that whether actually struck by the core barrel or not his reaction in stepping back to avoid the core barrel which was tilting toward him was a normal reaction in the exercise of ordinary care to prevent injury to himself and did not constitute negligence on his part. The Defendant, therefore, has failed to sustain its burden to satisfy the Court by a preponderance of the evidence that Brandel was guilty of contributory negligence with reference to his accident.

## ACTIVE NEGLIGENCE OF PLAINTIFF

However, the active negligence of the Plaintiff prevents its recovery herein. The parties have agreed that the Plaintiff cannot recover herein if it was guilty of active negligence (as distinguished from passive negligence) either causing or contributing to the cause of the Brandel accident. The Defendant claims that the Plaintiff was guilty of active negligence in allowing the hole or opening to exist in the bridge floor in the area in which Brandel was required to work and through which Brandel fell. From the evidence presented, the Court finds and concludes that the Plaintiff was guilty of active negligence in this respect. The hole or opening in the bridge floor was about three feet wide and eight feet long. It extended from the caisson being then drilled back to the west toward and in part along the side of the flat-car on which the crane was situated. The hole was situated lengthwise between the ends of the railroad ties and the inside of the south bridge girder or south side or railing of the bridge. Other similar openings in the area of work had been covered by timbers. The railroad claims that this hole or opening was necessary as a place through which workers could reach the checkerboard structure situated below the bridge floor and was further needed as a place through which to dump the contents brought up from inside the caissons being drilled into the river bed. But the Court finds from the evidence that a ladder was situated on the other side of the bridge from said opening or hole for the use of the workers in going to and from the checkerboard and, moreover, a hole or opening the size of this hole would not be necessary for this stated purpose. There is no ladder situated in this hole or opening even though it appears that if a worker desired he could reach the checkerboard through this hole by sliding down certain steel cables which supported the checkerboard structure from the floor of the bridge. As to the other claim, the Court finds and concludes from the evidence that the above stated size of the hole or opening was unnecessary for the purpose of dumping the material brought

up from inside the caisson being drilled. It was the testimony of the crane operaator that for the most part he dumped this material over the side of the bridge because otherwise it would mostly fall on the checkerboard below when dumped through said hole. Further, that for the purpose of dumping the material in this manner he would only need a hole or opening next to the caisson about one foot wide. The evidence also discloses that the Plaintiff did not provide railings or a cover for this hole or opening when the same was not in use. The Court, therefore, finds and concludes that the Plaintiff was guilty of negligence in allowing this hole or opening to exist as it did at the time and place involved. In this manner, the Plaintiff violated its duty to provide a reasonably safe place for its employees to work. Moreover, the Court finds that this negligence constitutes *active* negligence on the part of the Plaintiff and not passive negligence. Emonz v. N. Y., N. H. & Hartford R. R. Co., 42 Misc.2d 957, 249 N.Y.S.2d 506 (1964), 24 A.D.2d 555, aff'd 260 N.Y.S.2d 611.[3] The Plaintiff, for the purpose of settling the FELA case brought against it by Brandel, must acknowledge negligence on its part but only does so by claiming a failure on its part to warn Brandel of the tilting core barrel. But, the Court is of the opinion and finds that the real negligence of the Plaintiff with reference to the Brandel accident was in permitting the above described hole or opening to exist in the area where its workmen were required to work and do so for no valid purpose and without railings, cover or warnings. Furthermore, it is reasonable to assume that Brandel would have received no injury of consequence had it not been for the opening or hole in the bridge floor since the core barrel did not, in fact, fall on him or even from the bed of the flatcar. Thus, had the hole been covered Brandel would have suffered, but little harm, if any, in stepping or falling back from the flat-car stirrup when the crane caused the core barrel to tilt in his direction. The Court, therefore, finds the Plaintiff to have been guilty of active negligence in connection with the Brandel accident by reason of allowing said hole or opening in the bridge floor to exist as it did.

The Plaintiff, by reason of the foregoing findings and conclusions of the Court, cannot prevail herein because Nation, the crane operator, was its servant and employee at the time of the Brandel accident and further, because the Plaintiff was guilty of active negligence in permitting the hole or opening to exist in the bridge floor at the time and location involved which negligence caused or contributed to the cause of the Brandel accident and injury. Judgment, therefore, should be entered herein in favor of the Defendant and against the Plaintiff and the Plaintiff's action should be dismissed. Counsel for the Defendant will prepare an appropriate judgment based on the foregoing.

3. This case provided in part:
"For the defendant to recover either indemnification or contribution under the sidetrack agreement, the negligence of the third party defendant must be established. This has been done. * * * It must next be determined if the defendant was negligent and, if so, was the negligence active or passive. * * * Defendant's train masters made periodic inspections of third party defendant's sidetracks, including the one on which the accident occurred. Said inspections included the condition of the telltales. Plaintiff claimed to have reported the condition of this telltale to his superiors six months and one month before the accident. The defendant had actual knowledge of this dangerous condition and directed its employees to subject themselves to this danger. This constitutes active negligence, and, in and of itself, precludes the defendant from claiming indemnity either under the sidetrack agreement or at common-law * * *. The knowledge of the defendant of this dangerous condition and its failure to correct it or to direct the third-party defendant to correct it makes the defendant equally responsible with the third-party defendant * * *." 249 N.Y.S.2d 506, at p. 510.